## No. 20322.

ELMER GONZALEZ, JR., *v.*,
THE PEOPLE OF THE STATE OF COLORADO.
(398 P.2d 236)

Decided January 11, 1965.     Rehearing denied February 1, 1965.

Donald L. Lozow, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, John P. Moore, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Pringle delivered the opinion of the Court.

The information commencing this action charged Gonzales, in two counts, with possession of narcotic drugs in violation of C.R.S. '53, 48-6-2. A jury found him guilty on both counts, and the court entered judgment and sentence. Gonzales brings error here.

On the basis of information furnished to him that narcotic purchases had been made from one Marsh, Sergeant Duane Borden, head of the Narcotics Division of the Denver Police Department, determined to arrest Marsh at his residence in Denver, Colorado. In order to prevent disposal of the narcotics before arrest was made, a detective was disguised as a Yellow Cab driver so that he could reach the door of the Marsh residence without being recognized as a policeman. The detective, so disguised, knocked on the door, and, when it was opened, showed his badge and said, "You're under arrest."

The detective and another officer then entered the house. As they walked in, they observed the defendant Gonzales and other members of the Marsh family seated at a table. One of the persons at the table was in the process of rolling marijuana cigarettes, and a tobacco tin containing marijuana was on the table. All those in the room were then told they were under arrest. A handrolled marijuana cigarette was found in Gonzales' top-

coat, and when he was again searched on his arrival at the police building, the drug amidone was found in it. The marijuana, or cannabis sativa L., formed the basis for the first count of the information, and the amidone was the basis for the second count.

The information was filed on March 1, 1960. Because of numerous continuances, the appointment and withdrawal of counsel, and the entry and withdrawal of a plea of not guilty by reason of insanity, the matter did not come to trial until April 4, 1962. On that date, Gonzales moved, under Colo. R. Crim. P. 41 (e), to suppress the evidence acquired by the police department from his topcoat. After hearing testimony, the trial court denied the motion on the ground that the search was incident to a lawful arrest. The case then went to trial, and Gonzales was convicted of possession of narcotic drugs on both counts of the information.

█ Gonzales' major argument is that the marijuana and amidone were obtained by the police in violation of the Fourth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment, and that therefore the motion to suppress should have been granted. At the outset, we note that although *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, making illegally obtained evidence inadmissible in state courts, was not the law when the arrest took place — February 24, 1960 — it had become the law at the time of the motion to suppress on April 4, 1962, and was binding on the district court at that time. It was not *Mapp,* however, which made unreasonable state searches and seizures illegal under the Fourth Amendment to the United States Constitution; for in *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, it was held that the Fourth Amendment applied also to the states because of the due process clause of the Fourteenth Amendment. *Wolf* did not impose the exclusionary rule on the states.

On the contrary, it allowed the states to develop their own rules to deter unlawful searches and seizures.

The United States Supreme Court, thereafter, became dissatisfied with remedies afforded by the states to one who was the victim of illegal search and seizure. It thereupon promulgated *Mapp* which required the exclusion of illegally obtained evidence in state courts as well as in federal courts. Thus, *Mapp* did not change the law with respect to the legality of state searches and seizures; rather it dealt with the rules of admissibility of evidence in state courts, *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, Fn. p. 45. From the moment *Mapp* became law it bound all state trial courts to exclude illegally obtained evidence.

We turn now to the problem raised by the search and seizure in this case. Since the validity of Gonzales' arrest, and the subsequent search of his person, depends upon the validity of the search conducted by the officers in the Marsh home, we must first decide whether the officers legally gained admittance to the Marsh home. As noted, they had neither search nor arrest warrants. Ordinarily, one's house may lawfully be searched without a search warrant when the search is incidental to a valid arrest at the house, *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, *Hernandez v. People,* 153 Colo. 316, 385 P.2d 996, and such a search is legal even though it would have been possible to procure a search warrant, *United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

The lawfulness of arrests without warrants by state officers for state offenses is determined by state law. *Ker v. California,* supra. C.R.S. '53, 39-2-20 (1960 Perm. Supp.) authorizes arrests without warrants by an officer:

"* * * for a criminal offense committed in his presence; and * * * when a criminal offense has in fact been com-

mitted, and he has reasonable ground for believing that the person to be arrested has committed it."

The terms "probable cause" and "reasonable grounds" are substantially equivalent in meaning. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Ker v. California,* supra; *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. In dealing with probable cause, one deals with probabilities. "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Draper v. United States,* supra at 313; *Brinegar v. United States,* supra at 175.

We find that the officer had probable cause to arrest Marsh under the circumstances present in this case. An employee had made two purchases of narcotics from Marsh for the police department. For several days prior to the arrest, the police had kept the house under surveillance. During that period they observed numerous people, who were known to use marijuana, come to the residence. The officers' information and observation were clearly sufficient to warrant a man of reasonable caution to believe that an offense was being committed. Even if the information received by the officer from the informer was hearsay, nevertheless, it has been held that information from a reliable informer corroborated by the officers' own observations is sufficient to support a reasonable belief that a crime is being committed. *Draper v. United States,* supra.

Having made a valid arrest at the door of the house, the officer was entitled to make a reasonable search of the house in order to find and seize articles connected

with the crime as its fruits, or as the means by which it was committed. See *Hernandez v. People,* supra, for a full discussion of this point. It was, therefore, proper for the officer to walk into the room in which the Marsh family and Gonzales were seated and to seize the marijuana which was in full view on the table. Although the officers did not have probable cause 'to arrest Gonzales when they entered the house, probable cause existed at the time of his arrest. Gonzales' presence in the room, watching Marsh roll marijuana cigarettes, and the officers' knowledge that Marsh was involved in marijuana traffic, established probable cause for his arrest. Cf. the arrest of Diane Ker in *Ker v. California,* supra.

Since the arrest of Gonzales was valid, the search of his topcoat, which disclosed marijuana, was valid. "* * * no one questions the right, without a search warrant, to search the person after a valid arrest." *United States v. Rabinowitz,* supra at 60.

Gonzales next argues that he was denied the right to a trial within two terms of court after commitment, granted him by C.R.S. '53, 39-7-12, and the right to a speedy trial, granted by Article II, Section 16 of the Colorado Constitution. The record discloses that continuances were obtained at the request of the defendant on March 3, 1960, March 10, 1960, and June 14, 1960, and by agreement of both parties on July 13, 1960. Once Gonzales successfully obtained a continuance, C.R.S. '53, 39-7-12 spent itself. It contains no language making it applicable after a delay has been caused by the defendant. *Medina v. People,* 154 Colo. 4, 387 P.2d 733.

Nor was Gonzales denied his constitutional right to a speedy trial. Speedy trial means trial consistent with the court's business. Speed is important only insofar as it aids in the achievement of justice. Hence, it is a relative concept. *Medina v. People,* supra. The record here discloses four continuances at the request, or with

the consent of Gonzales; the appointment, withdrawal, and re-appointment of counsel; and the entry and withdrawal of a plea of not guilty by reason of insanity. Under these circumstances, we do not feel that the defendant was denied a speedy trial.

Gonzales' last argument is that his motion for mistrial should have been granted. A police officer was allowed to testify out of order as to the contents of the tobacco tin found on the table at the residence, on the condition that they would be connected to Gonzales later during the trial. When they were not so connected, Gonzales moved for a mistrial. The trial court denied the motion, but instructed the jury to disregard the testimony regarding the tobacco tin. We find this to be sufficient. It is presumed that the jury followed the court's instruction. Whether a mistrial should be granted rests in the trial court's discretion, and its ruling will be disturbed only for abuse of discretion. *Leick v. People,* 136 Colo. 535, 322 P.2d 674. We find no such abuse here.

The judgment is affirmed.