No. 20728.

JOHN FREDERICK WILSON *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(398 P.2d 35)

Decided January 11, 1965.

243

Edward J. Byrne, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Aurel M. Kelly, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Pringle delivered the opinion of the Court.

The defendant below, John Frederick Wilson, was convicted of possession of heroin and conspiracy to possess heroin. He brings error here.

On December 28, 1960, three members of the Denver Police Department had the apartment building in which Wilson and his wife lived under surveillance. They saw a car containing three women drive away from the apartment house, and decided to stop it because they "thought there was a possibility there was dope in the car." They found no narcotics in it, but decided to go to the Wilsons' apartment anyway. They had neither search nor arrest warrants.

After learning which apartment was Wilson's, they went to the door, knocked and identified themselves as police officers. Someone shouted, "Just a minute"; but since the officers heard someone running, they broke the door down. One officer followed Mrs. Wilson into the kitchen, where he found certain items, including burnt bottle caps, syringes, hypodermic needles, and medicine droppers. Another officer, after questioning Wilson,

found a balloon on the livingroom floor containing thirteen capsules of heroin.

The information was filed on January 5, 1961. A motion to suppress the articles and heroin obtained from the Wilsons' apartment was made on November 7, 1961. The motion was denied without findings on December 4, 1961. The case came to trial on April 11, 1962, and the jury found Wilson guilty of conspiracy to possess heroin, and possession of heroin.

█ As in *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236, also decided by us today, the defendant's major argument is that the evidence seized by the police was obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution. And, as in *Gonzales, Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, was binding on the trial court at the time of the motion to suppress, even though the decision had not been handed down at the time of the defendant's arrest. For a full discussion of the effect of *Mapp* under such circumstances, see *Gonzales,* decided this day.

█ The basic premises here are the same as those set forth in *Gonzales.* In order to justify the search of Wilson's apartment, it must have been incident to a valid arrest. Ordinarily, one's house may lawfully be searched without a search warrant when the search is incidental to a valid arrest at the house, *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; *Hernandez v. People,* 153 Colo. 316, 385 P.2d 996, and such search is legal even though it would have been possible to procure a search warrant. *United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

Under the criteria set forth today in *Gonzales,* we agree with the defendant that the evidence seized by the police in this case was obtained illegally. Sergeant Borden testified as follows:

"Q. When you knocked on the door you were planning to arrest these people, were you not?

"A. No, sir, I wanted to search for heroin and opium derivatives.

"Q. You didn't go there to make an arrest unless you found something?

"A. That is correct.

And officer Norden testified:

"Q. You weren't going to make an arrest, you didn't go there to arrest Mr. Wilson?

"A. We went there to further our investigation, if an arrest was necessary we would make it, yes, sir."

Sergeant Borden also testified that the arrest of Wilson took place after the search of the apartment. It is thus clear that the purpose of the entry into Wilson's apartment was search, not arrest, and the circumstances are such that a search without a warrant was clearly illegal. See *Agnello v. United States,* supra; *Hernandez v. People,* supra.

 The result here arises from the fact that before *Mapp* was announced law officers in this state were not concerned with the necessity of obtaining a warrant before a search of a home could be made. They were justified in following this course of action in this state by reason of *Massantonio v. People,* 77 Colo. 392, 236 Pac. 1019 and *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 95 L.Ed. 1782. For those cases held that if evidence of a crime was found upon the search of a home, no matter how illegally or in how shocking a manner it may have been obtained, the evidence was admissible. But *Mapp* had radically changed this approach to law enforcement at the time of the hearing of the motion to suppress in this case. Laudable ends no longer justify illegal means to obtain those ends and illegal searches can no longer furnish a foundation for the admission of evidence found and taken under illegal search. Wilson's motion to suppress the evidence taken in the illegal search should

have been granted. Its denial constitutes reversible error.

The following quotations from *Lee v. United States,* 232 F.2d 354, 355-6, (D.C. Cir. 1956) are singularly apposite here:

"* * * It is argued that the arrest was lawful because the officers had probable cause to know that a felony had been committed and, based on the tip, that Lee had committed it. But we do not reach that question because the search and seizure were not in reality incident to the arrest. The testimony shows that the search and seizure preceded the arrest, and that the officers intended by the entry and search to secure evidence upon which to predicate the subsequent arrest. * * * A number of courts have held in similar circumstances that such a search is not incident to the arrest, but rather the arrest is in truth incident to the search [citing cases]. And of course the search cannot be justified by what it turned up. [citing cases]

"Since there was no arrest to which the search and seizure were incident, and since there was no search warrant, the search and seizure of the guns were unlawful under the Fourth Amendment to the Constitution of the United States, for there were no circumstances which could justify dispensing with the necessity for a search warrant. * * * *"

See also the penetrating discussion by Mr. Justice Stewart concerning warrantless arrests contained in *Beck v. Ohio,* (decided Nov. 23, 1964) 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.

■ The People seek to justify the search and seizure here on the basis of C.R.S. '53, 48-6-11. That statute requires that officers:

"* * * having personal knowledge or reasonable information that any of the drugs mentioned in this article are kept in violation of law or on any person or in any place, *shall* search such suspected person or place *with-*

*out a warrant and without any affidavit being filed,* and if such officer find upon the person or the premises such drugs, he shall seize the same and arrest any person in charge of such place or on whom such drugs are found \* \* \*." (Emphasis supplied.)

██ The language contained in this section authorizes a search under any circumstances of premises without a warrant whenever an officer has personal knowledge or reasonable information that certain unlawful drugs are being kept in those premises. Such statutory provisions are clearly and unequivocally unconstitutional when subjected to the guarantees afforded to all persons by the Fourth Amendment to the Constitution of the United States and Article II, Section 7 of the Colorado Constitution. Mr. Justice Jackson, as early as 1947, pointed out in *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 that the Fourth Amendment does not deny law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection, he said, consists in requiring that those inferences must be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. At least since that time the Federal Bureau of Investigation has been operating under these detached standards and there has been no suggestion that it has been rendered ineffective in its effort to combat crime. Any other rule, as Justice Jackson said, would "obliterate one of the most fundamental distinctions between our form of government where officers are under the law, and the police-state where they are the law."

 The United States Supreme Court has explicitly stated that it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as incident to a lawful arrest at the house. A belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for

a search of that place without a warrant. Such searches are constitutionally unlawful notwithstanding facts unquestionably showing probable cause. *Agnello v. United States,* supra. These principles have recently been made applicable to the states as well as to the federal government in *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, which also involved the search of a dwelling.

 As recently as June 15, 1964, Mr. Justice Goldberg in *Aguilar v. State of Texas,* 378 U.S. 108, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723, 726, spoke for the United States Supreme Court as follows in a passage particularly apposite here:

"* * * 'the informed and deliberate determinations of magistrates empowered to issue warrants * * * are to be preferred over the hurried action of officers * * * who may happen to make arrests.' *United States v. Lefkowitz,* 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877. * * * *A contrary rule 'that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.' Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436. Under such a rule 'resort to [warrants] would ultimately be discouraged.' *Jones v. United States,* 362 U.S. 257, 270, 80 S.Ct. 725, 736, 4 L.Ed.2d 697." (Emphasis supplied.)

Counsel for the People says that if we hold C.R.S. '53, 48-6-11 unconstitutional, we are in effect overruling *Newman v. People,* 23 Colo. 300, 47 Pac. 278. Not so. The difference between the statute involved in that case and the one which we now hold to be unconstitutional stands out as boldly as Pikes Peak on a clear day. In *Newman,* the statute required that a sheriff seize gambling equipment when he had knowledge that such equipment was present in a place, and to break open doors for the purpose of obtaining possession of this equipment. Nowhere

did that statute permit the seizure or the breaking down of doors *without a warrant* as does the statute here. Therein lies the obvious difference. Moreover, the case did not turn on a search and seizure question and had nothing to do with admissibility of evidence.

We must consider one other point raised by the defendant. He contends that he must be "set at liberty" pursuant to the terms of C.R.S. '53, 39-7-12, because he was not tried before the expiration of the second term of court after his commitment. The record discloses that on June 2, 1961, as a result of Wilson's motion for a severance, the trial court vacated the trial date of October 26, 1961, in order that Wilson could be tried separately from his wife, and that Wilson at that time expressly waived the requirements concerning the terms of court. Under such circumstances, C.R.S. '53, 39-7-12 is not applicable. *Medina v. People,* 154 Colo. 4, 387 P.2d 733.

This matter is reversed and remanded with directions to grant defendant a new trial not inconsistent with the views herein expressed.