[Crim. No. 4667. Fourth Dist., Div. One. June 26, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH PATRICK SENKIR, Defendant and Appellant.

## COUNSEL

Thomas & Parker and Richard A. Thomas for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Derald E. Granberg and Alan S. Meth, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**—Joseph Patrick Senkir (defendant) appeals from a judgment based upon verdicts imposing sentences for possession of restricted dangerous drugs for sale (Health & Saf. Code, § 11911), possession of narcotics for sale (Health & Saf. Code, § 11500.5), and possession of marijuana (Health & Saf. Code, § 11530).

The contraband of whose possession defendant was found guilty was found and seized in the execution of a search warrant.

The contentions on appeal consist of an attack upon the sufficiency of the affidavit upon which the search warrant was issued, the legality of the search warrant itself, and the refusal of the trial court at the time of trial to receive evidence intended to show that false information had been given to and recited by the officer who made the affidavit for issuance of the warrant.

The warrant, issued November 13, 1970, was based upon the affidavit of Howard Rhoads, Jr., made November 13, 1970.

The affidavit set forth the following: Rhoads was an officer of California Bureau of Narcotic Enforcement (BNE), assigned to its office in San Diego for two and one-half years investigating narcotics and drug traffic in the area, who had made numerous arrests based upon his familiarity with the techniques of narcotics and drug violators; he had worked with Agent Comstock, a fellow officer of BNE, for over two years and knew Comstock had been such agent for over four years; Rhoads had the highest regard for Comstock's veracity; Comstock had told Rhoads of a certain informer, whom Comstock designated as "XX," who had been known to Comstock for several months during which time "XX" had furnished information to Comstock regarding narcotics offenses which Comstock had investigated and which had resulted in at least five felony convictions for marijuana offenses; "XX" had never given Comstock false or misleading information and had correctly identified marijuana in Comstock's presence; because of that Comstock had reason to and did believe "XX" was reliable and credible; "XX" had now informed Comstock that "XX" had been at premises known as 1155 Monserate Avenue in Chula Vista on at least one occasion on or about October 31, 1970, and on each occasion "XX" had seen at said premises several kilos of green vegetable material which "XX" recognized as manicured marijuana, and on each occasion "XX" had been with a person known to "XX" as "Little Joe" and to be the resident of the premises; Rhoads had learned from telephone company officials they had checked their records which showed telephone service at the premises was in the name of Joe Senkir; Rhoads had discovered from law enforcement officials Joseph Senkir had been sent to California Youth Authority in 1960 for possession of narcotics, was discharged from parole in 1963, was convicted on October 23, 1967 in San Diego of possession of marijuana, sent to Chino, and was now on parole to San Diego County on that conviction; Senkir had given the Monserate Avenue address in recent law enforcement contacts; his nickname was "Little Joe"; he has a tattoo reading "Hell's Angels" on his upper left arm; because of

the foregoing, Rhoads had reason to believe there were on the Monserate Avenue premises manicured marijuana, paraphernalia for the transfer, sale or consumption of marijuana, including but not limited to butcher paper, scales, alligator clips and written articles on the use and consumption of narcotics; and papers, documents and effects which show possession, dominion and control of said premises, including but not limited to probation and parole orders, rent receipts, cancelled mail envelopes, monogrammed clothing and keys.

The warrant authorized a search for those described articles.

The execution of the search warrant on November 18, 1970 did not discover any marijuana in brick form; it did discover marijuana, heroin and restricted dangerous drugs, a jacket with "Little Joe" lettered across the back hanging in the garage, two water pipes, several other pipes, weapons and ammunition, and personal identification papers.

A motion to traverse the search warrant and to exclude the evidence seized was made in the course of the preliminary hearing and denied. The motion was based upon the cross-examination of Rhoads as to what information he had received from Comstock and when he had received it. The testimony of Rhoads fairly supported the statements he made in the affidavit.

A motion to suppress the seized evidence under Penal Code section 1538.5 and a motion under Penal Code section 995 were made in the superior court and denied.[1]

Although Comstock was not present at the preliminary hearing, he appeared and testified at the hearing of the motion to suppress evidence in the superior court on February 23, 1971, when his testimony verified that he knew an informer by the name of Reynaldo whose residence so far as known to Comstock had been with the informer's parents in Oxnard and who was the "XX" whom Comstock told Rhoads about; the informer had given him information in not less than five cases that had resulted in arrests for narcotics violations and had never given him false information. Comstock gave the names of two persons who had been convicted on the basis of such information; others had not yet been tried; Reynaldo had identified marijuana in a kilo-size package to Comstock; he had given Comstock the information Comstock was quoted in the affidavit of Rhoads as having been given to Rhoads by Comstock, and Comstock had given

---

[1]The reporter's transcript and the People's brief mention a petition for a writ of prohibition filed in this court. Such a petition was filed (4 Civ. No. 11007). Its denial without opinion on April 1, 1971 can have no bearing upon this appeal.

that information to Rhoads substantially in the form in which Rhoads stated he had received it; Reynaldo had been killed in a vehicle accident in January 1971.

On the opening day of trial defendant's attorney requested leave to present evidence in support of a motion to suppress. He offered to present the testimony of the mother and wife of Reynaldo that the latter had never been in San Diego, and on October 31 had been on a trick-or-treat expedition with the children, and the testimony of defendant that he had not been at the Chula Vista premises on October 31.

The questions presented are these:

1. Does the information contained in the affidavit support the reasonable inference that anything other than marijuana in brick form was on the premises?

2. Is the description "paraphernalia for the transfer, sale or consumption of marijuana," followed by the designation of specific objects, sufficiently definite and specific to meet the constitutional requirements?

3. Did the description "papers, documents and effects which show possession, dominion and control of said premises, including but not limited to probation and parole orders, rent receipts, cancelled mail envelopes, monogrammed clothing and keys" meet the constitutional requirements?

4. Did the trial court err in not allowing defendant to present evidence at the time of trial to traverse the warrant and suppress the evidence?

■ A search warrant may be issued by a magistrate only upon probable cause. (U.S. Const., 4th Amend., Cal. Const., art. I, § 19; Pen. Code §§ 1523, 1525.) That test is met if the affidavit avers competent evidence sufficient to lead a reasonably prudent man to believe there is a basis for the search. (*People* v. *Prieto,* 191 Cal.App.2d 62, 68 [12 Cal.Rptr. 577].) Law enforcement officers are in a more favorable position when a warrant is obtained (*People* v. *Keener,* 55 Cal.2d 714, 723 [12 Cal.Rptr. 859, 361 P.2d 587]), and doubtful or marginal cases may largely be determined by this preference accorded to warrants (*United States* v. *Ventresca,* 380 U.S. 102, 106 [13 L.Ed.2d 684, 687-688, 85 S.Ct. 741]). ■ We are to view the affidavit in a commonsense way rather than technically (*United States* v. *Ventresca, supra,* 380 U.S. 102, 106). (*People* v. *Kesey,* 250 Cal.App.2d 669, 671 [58 Cal.Rptr. 625].)

The affidavit in the case at bench showed in the form of an objective

statement by the primary informer to Comstock what the informer had seen, where and when he had seen it and in whose company; it showed by a recital of facts the reasons why Comstock, the ultimate informer, believed the primary informer to be reliable and credible; it showed that all of such information had been received by Rhoads.

The affidavit, therefore, met the two-pronged test of *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], if the issuing magistrate might reasonably find the affiant could rely upon the statement of a fellow officer as to information given the fellow officer by an informer, proven reliable by the fellow officer, of what the informer had personally observed.

A recent statement of the governing rules is found in *People* v. *Superior Court,* 6 Cal.3d 704, 711-712 [100 Cal.Rptr. 319, 493 P.2d 1183]: " 'Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, *the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . .*' (Italics added.) (See also *United States* v. *Harris,* 403 U.S. 573 [29 L.Ed.2d 723, 91 S.Ct. 2075].)

"In order for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) The affidavit must allege the informant's statement in language which is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in the statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable. (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 152 . . . ; *People* v. *Hamilton,* 71 Cal.2d 176, 179-180. . . .) Although information provided by even an anonymous informer is relevant on the issue of reasonable cause, evidence must be presented to the court to justify the conclusion that reliance on the information was reasonable. . . . (*People* v. *Scoma,* 71 Cal. 2d 332, 337-338. . . .)"

In determining that Rhoads might rely upon information given by his fellow officer, who in turn had received it from a reliable informer, the issuing magistrate correctly applied the rule governing probable cause to make an arrest. "In determining the sufficiency of an affidavit for the issuance of a search warrant the test of probable cause is approximately

the same as that applicable to an arrest without a warrant, a commitment by a magistrate or an indictment by a grand jury (*People* v. *Stout*, 66 Cal. 2d 184, 193 . . .; *Williams* v. *Justice Court*, 230 Cal.App.2d 87, 94 . . .), namely, whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion of the guilt of the accused. (*People* v. *Govea*, 235 Cal.App.2d 285, 296. . . .)" (*Skelton* v. *Superior Court*, 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485].)

In *Jones* v. *United States*, 362 U.S. 257, 270 [4 L.Ed.2d 697, 708, 80 S.Ct. 725, 78 A.L.R.2d 233], the court said: "What we have ruled in the case of an officer who. acts without a warrant governs our decision here. If an officer may act upon probable cause without a warrant when the only incriminating evidence in his possession is hearsay, it would be incongruous to hold that such evidence presented in an affidavit is insufficient basis for a warrant."

█ Depending upon the circumstances, information given to the arresting officer by another officer who himself received the information from a third person may furnish probable cause for an arrest. That is so where the officer who gave the information to the arresting officer himself testifies concerning his receipt of it and as to the circumstances that made it reasonable to accept the information as true. (*People* v. *Lara*, 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Brice*, 234 Cal.App.2d 258, 266-267 [44 Cal.Rptr. 231]; *People* v. *Cartier*, 170 Cal.App.2d 613 [339 P.2d 172]; *Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36].)

█ Information from a proven reliable informer given to a peace officer from whom it is transmitted to another officer or a series of officers, each of whom was entitled to place reliance on the one from whom he received the information, may give probable cause for arrest. (*People* v. *Gorg*, 157 Cal.App.2d 515 [321 P.2d 143]; *People* v. *Sanders*, 250 Cal. App.2d 123, 130 [58 Cal.Rptr. 259]; *People* v. *Estrada*, 234 Cal.App.2d 136, 150-152 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307]; *People* v. *Lopez*, 196 Cal.App.2d 651, 654 [16 Cal.Rptr. 728]; *People* v. *Robertson*, 240 Cal.App.2d 99 [49 Cal.Rptr. 345]; *Galena* v. *Municipal Court*, 237 Cal.App.2d 581, 589 [47 Cal.Rptr. 88]; *People* v. *Williams*, 174 Cal.App.2d 175 [344 P.2d 45].)

In *Lockridge* v. *Superior Court*, 275 Cal.App.2d 612 [80 Cal.Rptr. 223], an arrest was held without probable cause because it was not shown upon what information the arresting officer acted; it may be assumed that had evidence been introduced that he had heard a certain radio broadcast of certain information from a dispatcher who had himself received such

information from another officer in the field, the arrest would have been held good.

In *Price* v. *Superior Court,* 1 Cal.3d 836, 841 [83 Cal.Rptr. 369, 463 P.2d 721], the court passed upon the sufficiency of an affidavit made by a police officer based upon information given him by a reliable informant as to a conversation overheard by the informant between two other persons concerning the defendant. Concerning that affidavit, the court said: "The affidavit does not show that the persons overheard by the informant were speaking with personal knowledge of the matters contained in the conversation, that such persons were credible, or that their information was reliable."

The court in *Price* touched upon the double hearsay question, saying, at page 841: "The broad language of *Aguilar* and *Spinelli* quoted in *Hamilton* strongly suggests that the issuance of a search warrant may not be based upon an informant's hearsay statement which in turn is based not upon the informant's personal knowledge but upon the hearsay statement of another. However, we need not determine the matter because, even assuming that a search warrant could properly be issued on the basis of such double hearsay, both 'prongs' of the *Aguilar* test would have to be met both as to the informant's statement and as to the statement of the declarant reported by the informant. (Cf. *People* v. *Escollias,* 264 Cal.App. 2d 16, 18-19 . . .; *People* v. *Pease,* 242 Cal.App.2d 442, 446-447 . . .; *People* v. *Stewart,* 241 Cal.App.2d 509, 514-515 . . . .)"

We have no reason to think the court in *Price* intended to question the reasonableness of reliance by a law enforcement officer upon information supplied by another officer identified by name, organization and duty station, which the latter has obtained from an informant whose reliability is vouched for by the second officer for sufficient reasons he sets forth.

Again, in *Halpin* v. *Superior Court,* 6 Cal.3d 885 [101 Cal.Rptr. 375, 495 P.2d 1295], an opportunity was given for a holding that a warrant may not issue upon the testimony of a law enforcement officer that he had received information from a second officer as to what had been told the latter by an informer. No such holding was made; the case was decided upon the failure of the testimony to show by what means the primary informer had acquired the information he communicated.

We conclude there may be probable cause for the issuance of a search warrant based upon the affidavit or testimony of a law enforcement officer that a fellow officer, identified by name, organization and duty

station, had stated to him that a certain informer had given specific information as to matters observed by the primary informer personally showing the commission of a felony by possession of contraband at a certain time and place, and the informing officer had further stated sufficient specific, objective reasons that showed to him that his informant was of proven reliability.

The marijuana mentioned in the affidavit was either for use or for sale; it would be reasonable to infer that in either case the paraphernalia for use or sale of marijuana would also be present, and to permit a search for such paraphernalia. (*Frazzini* v. *Superior Court*, 7 Cal.App.3d 1005, 1013-1014 [87 Cal.Rptr. 32].)

The motive behind the objection to the itemization of some of the usual paraphernalia, and of evidence that might show who was in possession of the premises, is that such objects might be small and call for a more minute search than would be necessary to find marijuana in packages of a kilo each in weight.

However, neither the affidavit nor the search warrant described marijuana in kilo bricks as the object of the search, but manicured marijuana, which might well be present in small quantities in various places, or made up into cigarettes. Such might be the case if the marijuana were there for use on the premises, although once in the form of bricks.

If the authorized search for marijuana discovered other evidence tending to support a charge of the crime of possession of marijuana, it was proper to seize such evidence whether or not described in the warrant, as well as any contraband of another kind found in the course of a legal search. (*Skelton* v. *Superior Court*, *supra*, 1 Cal.3d 144, 155.)

While Penal Code section 1525 requires the affidavit particularly describe the property to be seized, the federal Constitution requires only that the warrant particularly describe the property. (*Lowrey* v. *United States*, 161 F.2d 30.) We assume the scope of the warrant under the federal rule might include any specifically described property that might be an instrumentality of the crime or was relevant as evidence of the commission of a crime, the presence of which might reasonably be inferred from the affidavit.

In *People* v. *Walker*, 250 Cal.App.2d 214, 216-217 [58 Cal.Rptr. 495], the affidavit stated there were dangerous drugs, heroin and marijuana together with "paraphernalia instrumental in the use of said contraband." The warrant issued in those terms, although the affidavit based upon information from an informant, did not quote any information about paraphernalia.

Also, in *People* v. *McEwen,* 244 Cal.App.2d 534, 535 [53 Cal.Rptr. 362], the warrant described: " 'Trick books, personal address directories, utility bills, phone bills, rent receipts, telephone message slips . . . mechanical devices employed by prostitutes, . . .' " It seems clear that the presence of such objects was inferred from the character of the crime thought to have been committed on the premises.

■    We conclude that reasonable inferences may be indulged as to the presence of articles known to be usually accessory to or employed in the commission of a specific crime. (Cf. *Frazzini* v. *Superior Court, supra,* 7 Cal.App.3d 1005, 1013-1014.)

In *Aday* v. *Superior Court,* 55 Cal.2d 789, 795-796 [13 Cal.Rptr. 415, 362 P.2d 47], the description consisted of a number of broad, general categories, the last of which embraced "any and all other records and paraphernalia" connected with the business of the corporate petitioners. The court noted at page 796: "Articles of the type listed in general terms in the warrant are ordinarily innocuous and are not necessarily connected with a crime. The various categories, when taken together, were so sweeping as to include virtually all personal business property on the premises and placed no meaningful restriction on the things to be seized. Such a warrant is similar to the general warrant permitting unlimited search, which has long been condemned."

In the case at bench the property was described with sufficient particularity and there was a meaningful restriction on the things to be seized: the drug itself, and only such paraphernalia instrumental in the use, transfer or sale of the drug, and articles, some of which were enumerated, that could aid in identification of the person in possession.

■    We consider next whether the trial court should have received evidence intended to show the information Comstock purported to have received and which he passed on to Rhoads as being credible could not have been true.

In passing upon an affidavit in support of a search warrant, the magistrate does not pass upon the question of the ultimate truth of the matters contained therein.

In the case at bench the magistrate determined these matters: Rhoads had information which if reliable gave rise to a strong and reasonable suspicion marijuana was present on the described premises; Rhoads had obtained that information from Comstock, a fellow law enforcement officer in BNE whom Rhoads had a right to and did rely on; Comstock in turn

had received the information from "XX," whom he had sufficient reason to believe reliable for reasons stated by Comstock to Rhoads and set out by Rhoads in the affidavit; the information given by "XX" was corroborated in one particular: the premises were occupied by someone known as "Little Joe."

The basis for the affidavit as to the matters passed upon by the magistrate could be attacked by showing Rhoads had not received the information from Comstock he attributed to the latter; Comstock was not a BNE agent with whom Rhoads had worked previously and for whose veracity he had a high regard; Comstock had not received from "XX" the information he attributed to the latter; "XX" had not given Comstock prior reason to believe "XX" to be a reliable informer.

Defendant had attempted to make those attacks in his examinations of Rhoads and Comstock at the preliminary hearing and at the hearing of the motion to suppress. What he proposed to do at the trial was quite different: he proposed, not to show that "XX" had not communicated the information to Comstock, but, in effect, that although "XX" might have communicated the information, it could not have been true because "XX" had never been in San Diego; he was in Ventura County on the night of October 31; defendant was not at the Chula Vista premises on that date.

The sufficiency of the affidavit may not be attacked in that manner. Consequently, the court did not err in refusing to hear anew or reconsider a motion to suppress for the purpose of receiving such evidence.

The judgment is affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.