### No. 25614

**The People of the State of Colorado v. Stanley Robert McGahey and Joseph Martin Vanackeren**
(500 P.2d 977)

Decided September 11, 1972.

David L. Wood, District Attorney, Loren B. Schall, Chief Deputy, Ronald L. Schultz, Deputy, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Edwin L. Felter, Jr., Deputy, Don L. Nelson, Deputy, for defendants-appellees.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an interlocutory appeal by the district attorney of the Eighth Judicial District from an order of the trial court granting the defendants' motion to suppress "as evidence against defendants in any criminal proceedings: (a) a narcotic drug; (b) statements made by defendants to police officers after their arrest; . . ." The district attorney certified to the trial court that the evidence ordered suppressed consisted "of the entire proof of the charge of possession of Narcotic Drug pending against the defendants." C.A.R. 4.1.

This case was argued to the trial court concurrently with *People v. Buttorff,* 179 Colo. 406, 500 P.2d 979, announced contemporaneously with this opinion. The critical facts are basically similar and what we say here is applicable to and controlling in *Buttorff.*

The facts, very briefly, are that Officer Fox received a tip from a confidential informant, whose reliability had not been previously tested, that what appeared to be marijuana plants were in the picture window of a house at 5336 North Taft, Loveland, Colorado. The house was located 100 to 150 yards off of Taft Street. Officer Fox drove into the driveway, which came to within 25 feet of the house. At this point he observed marijuana plants in the picture window of the house. The officer made an affidavit based on the foregoing

facts, obtained a search warrant, returned to the house and seized the plant.

The trial court held "that the actual going into the driveway, based on a tip, to in effect confirm that tip, was in fact a search for evidence and, therefore, . . . violates the defendant's constitutional rights for unlawful searches and seizures under the law," and granted the motion to suppress. We disagree and disapprove of the court's ruling.

In arriving at his conclusion the trial judge stated that the officer could not investigate the information of a law violation he had received, and that this was, in effect, a search. He also concluded that by going into the driveway the officer had committed a trespass, and that he was not in a place where he had a right to be when he observed the marijuana plants. Finally, since the officer had no right to be there in the first place, he could not use the illegally obtained information to obtain a search warrant; hence, that which was seized under the search warrant was fruit of the poisonous tree.

This court has had occasion to consider searches and seizures under similar circumstances on previous occasions. *Blincoe v. People,* 178 Colo. 34, 494 P.2d 1285; *People v. Snelling,* 174 Colo. 397, 484 P.2d 784; *People v. Baird,* 172 Colo. 112, 470 P.2d 20; *Wilson v. People,* 156 Colo. 243, 398 P.2d 35.

▮▮ In *Wilson* this court held that a belief, no matter how well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of the dwelling without a lawful warrant. Similarly, once the police officers were on the premises, they could not make use of anything observed or seized therein to form the basis for a determination of probable cause to arrest the occupants.

In *Baird* police officers approached the house with the intent to conduct a search under the authority of an invalid search warrant. At this point, *Wilson* would have been controlling, but for the fact that the police officers observed, through the glass in the front door, certain illegal activity within the residence before they entered and before any

search was conducted. The court in *Baird* said:

"Standing outside the door, the police officers were in a place where they had every right to be. They were not required to close their eyes to evidence in plain view, and the sight of such evidence could properly form the basis for a determination of probable cause to make an arrest. *Martinez v. People,* 168 Colo. 314, 451 P.2d 293; *Alire v. People,* 157 Colo. 103, 402 P.2d 610."

■ Likewise here the officer's observation of the marijuana plants in the picture window could properly form the basis for a determination by the magistrate of probable cause to issue the search warrant.

In *Snelling* we held that,

". . . So long as this investigation and surveillance activity does not constitute an invasion of privacy constituting an infringement upon constitutional rights, then no probable cause requirement need be met to initiate and carry out the investigation and surveillance activities. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.

In *Katz v. United States, supra,* the court held,

". . . the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not subject to Fourth Amendment protection. (Citing cases)"

■ In *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, it is stated:

". . . It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

The marijuana plants were in plain view and the officer not only had a right but a duty to go to the defendants' premises to investigate. *Blincoe v. People, supra.*

■ In *Blincoe* the officers' presence on the property was to investigate a report of stolen property. Because the defendant here argues that the initial incursion by Officer Fox on the property constituted an invasion of the curtilage in violation of the United States Constitution, we repeat this

applicable language from the *Blincoe* opinion:

". . . Only after the officers failed to find anyone at home *and* were informed that one of the persons who resided in the house was then present in the back yard, did the officers enter the curtilage of the premises. The curtilage concept came from the court's desire to protect not only a citizen's house, but his grounds as well, from intrusions and an invasion of privacy. The police conduct was reasonable under the circumstances before us, and no claim can be made that a right of privacy was infringed. In this limited factual situation, the officers' presence on the property for the legitimate purpose of making inquiry about stolen goods was justified."

The authorities do not support the ruling of the trial court.

Accordingly, we reverse and remand for further proceedings not inconsistent with the views expressed herein.