## No. 25668

## The People of the State of Colorado v.
## Howard McGill and Robert Paul Reiter.

(528 P.2d 386)

Decided November 25, 1974.

David L. Wood, District Attorney, Loren B. Schall, Chief Deputy, for plaintiff-appellant.

Ray V. Greer, for defendants-appellees.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The district attorney prosecutes this interlocutory appeal from a ruling of the Larimer County District Court sustaining defendants' motion to suppress certain evidence which was seized pursuant to a search warrant. C.A.R. 4.1(a). The trial court granted the motion as to all evidence which was seized except for one marijuana plant. The district attorney contends that there was probable cause to support the warrant and that the warrant described the place and the items to be seized with the requisite specificity required by the Colorado Constitution and the United States Constitution. Colo. Const. Art. II, Sec. 7; U.S. Const. amend. IV. We hold that probable cause existed to obtain a warrant to search for and seize the marijuana plant, as well as the other similar narcotics and narcotics paraphernalia which were found in the scope of a reasonable search. Accordingly, we reverse the trial court's suppression order.

Defendants McGill and Reiter were charged by information with possession of more than one-half ounce of a narcotic drug,

to wit: marijuana. C.R.S. 1963, 48-5-2. The charges stemmed from contraband which the police obtained as the result of the search authorized by the warrant.

The warrant directed the police to search the premises at 224 East Elizabeth Street, Fort Collins, Colorado, for "growing cannabis plants, commonly known as marijuana, narcotics, dangerous drugs, implements and paraphernalia involved in drug use."

The search resulted in the seizure of the following items: 1. one marijuana plant in a clay pot; 2. one blue box from McGill's room containing — a. plastic bag of marijuana weighing 23 grams; b. plastic vial with 8.5 grams of seeds and stocks of marijuana; c. plastic vial with 7 grams of marijuana; d. one hashpipe; e. brown leather pouch; f. 19 packets of cigarette papers; g. one hashpipe; h. one roach clip; i. 31 red firecrackers; j. film can with .3 grams of marijuana; 3. one box containing 89 packets of cigarette papers; 4. plastic vial containing three suspected amphetamine tablets; 5. one plastic bag of seeds and stocks of marijuana weighing 13 grams, taken from room of Reiter; 6. two plastic bags of marijuana weighing 19 grams; 7. three packets of cigarette papers.

The house which was the subject of the warrant was divided into subunits. The basement comprised one apartment, and the main floor was a separate apartment with three individual sleeping rooms and a common living area. Each defendant entered into his own agreement with the owner of the house and was individually responsible for the rent due. McGill and Reiter, together with one other person, shared the bathroom, kitchen, and living room.

When the police arrived to conduct the search and entered the dwelling, they, for the first time, realized that the house was not being used as a one-family dwelling, but was separated into at least two distinct apartment units. With the consent of the lessees of the basement apartment, the officers superficially searched the basement. They then proceeded upstairs, searched the living room, seizing the plant, and then searched each bedroom and uncovered additional quantities of marijuana, amphetamines and narcotics paraphernalia.

There are two legal issues raised on this interlocutory appeal: (1) Whether facts set forth in the affidavit established probable cause for the issuance of a search warrant to search the defen-

dants' apartments for evidence apart from the marijuana plant. (2) Whether the warrant, although failing to designate the subunits of the house to be searched, nevertheless met the constitutional requirement that the premises to be searched must be described with particularity.

## I.
### Validity of the Warrant

The sufficiency of the affidavit which supported the search warrant must be measured by the standards outlined in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971); and *People v. Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971). The two-pronged test which emphasizes the basis upon which an informer's tip will provide a foundation for the issuance of a search warrant requires that the affidavit set forth (1) "the underlying circumstances necessary to enable the magistrate independently to judge the validity of the informant's conclusion," and (2) support of the affiant's claim that the informant was credible or his information reliable. *Spinelli v. United States, supra.*

The affidavit in this case satisfied the requirements of the first prong of the *Spinelli* test by setting forth that Coon, who was an auxiliary police officer, personally saw the marijuana growing in a window of the house. *People v. Peschong,* 181 Colo. 29, 506 P.2d 1232 (1973).

Judged by the citizen-informer rule, which we established in the *Glaubman* case, the second prong of the *Spinelli* test is met by the facts contained in the affidavit.

The warrant was issued on the affidavit of Officer Lambert, of the Fort Collins police department, in charge of the narcotics bureau. The affidavit alleged as grounds for the warrant the following:

"1. That Larry G. Coon, a resident of the City of Fort Collins, Colorado, and a Police Auxiliary of the Fort Collins Police Department, who has been trained in the identification of narcotics substances and has been used in search warrants before, told the affiant on April 25, 1972, at 2:15 p.m., he personally saw and

observed three growing cannabis plants in plain view in the window of said premises . . . ."

The trial court in ruling on the motion to suppress held that the affidavit was sufficient and that the search warrant was valid. The court, in limiting the validity of the warrant to the marijuana plant, said:

"There is nothing in the affidavit, no fact within the four corners of the affidavit that shows anything about any marijuana other than the plant; any narcotics other than the plant; dangerous drugs, implements or paraphernalia."

In short, the trial court would limit the reach of the search warrant to the items actually seen by the informant. This is too strict an application of probable cause. The magistrate could reasonably infer from the fact that three marijuana plants were growing in the house that there might also be marijuana seeds, stocks and the leaves, as well as the paraphernalia to use it for the purpose for which it was grown. *Irby v. United States,* 314 F.2d 251 (D.C. 1963); *United States v. Daniels,* 10 F.R.D. 225 (1950); *State v. Ingram,* 251 Or. 324, 445 P.2d 503 (1968).

In *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), Mr. Justice Jackson made this statement:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement *the support of the usual inferences which reasonable men draw from evidence.* Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

In *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the court said:

"While a warrant may issue only upon a finding of 'probable cause' this court has long held that 'the term "probable cause" . . . means less than evidence which would justify condemnation,' *Locke v. United States,* 7 Cranch 339, 348, 3 L.Ed. 364, 367, and that finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial. *Draper v. United States,* 358 U.S. 307, 311, 3 L.Ed.2d 327, 331, 79 S.Ct. 329."

This final quotation from *Ventresca* seems appropriate here:
". . . Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

If we were to hold that only the marijuana plant and its derivatives were specifically subject to seizure under the warrant in this case, the failure to include "dangerous drugs" would not have changed the result. This would be true because the police officers in executing the search for marijuana could lawfully have seized the amphetamines as contraband found in the course of a lawful search. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *People v. Renfrow,* 172 Colo. 399, 473 P.2d 957 (1970).

The search here was not an exploratory search, but a search for a specific class of named items. The court erred in suppressing the items seized under the facts.

II.

### The Search of the Premises

In our view, the warrant also meets the constitutional requirement that the place to be searched must be described with particularity, even though it failed to designate the subunits of the premises at 224 East Elizabeth Street which were the object of the search.

In stating the general rule regarding the constitutionality of search warrants relating to multi-unit dwellings in *People v. Avery,* 173 Colo. 315, 478 P.2d 310 (1970), we said:
"[A] search warrant which describes or identifies the larger multiple-occupancy structure and not the particular subunit to be searched is insufficient [under the Fourth Amendment]."

In *People v. Lucero,* 174 Colo. 278, 483 P.2d 968 (1971), we refined the *Avery* principle and noted an exception to the rule. We held that a description of the larger dwelling would be constitutional if the officers did not know or have reason to know that they were dealing with a multi-family dwelling when they obtained the warrant. Following the *Lucero* exception, the warrant under scrutiny is constitutionally sufficient.

The house was located in an area consisting of single-family dwellings and had only one numerical street address. Although there were front and back doors to the premises, it was not apparent from the exterior of the house that the entrances led to separate living units. Moreover, the citizen informant had been granted access to the house while repairing the electric meter and had not observed any indication of multiple occupancy. The mere presence of two individual mail boxes, located on either side of the front door and two utility meters does not require a different conclusion. The utility company advised that the house was a single-family dwelling. Under the circumstances, it was reasonable for the police to conclude that the house was not divided into subunits. As the trial court pointed out in its findings of fact, the police had reason to believe that the house was a single-family dwelling. *See People v. Alarid,* 174 Colo. 289, 483 P.2d 1331 (1971).

The fact that the police learned that the house was being used for multiple-occupancy purposes after they gained entrance to the premises does not alter our conclusion. When the police executed the warrant and discovered that the building was not a single-family residence, they did not have to abandon their search and obtain a new warrant. The police procedure, in this case, was reasonable in view of the exigent circumstances. Had they elected to delay their search to obtain an amended warrant, they would have jeopardized the search and the loss of evidence of narcotics which are easily destroyed. *People v. Lucero, supra.*

Accordingly, the police had probable cause to search the house for marijuana and to seize contraband which they found in the course of their search.

We reverse the trial court's ruling which suppressed the narcotics and narcotics paraphernalia which were seized in the scope of a reasonable search for narcotics pursuant to a definitive search warrant.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON dissent.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. In my view, probable cause existed to

obtain a warrant to search for and seize the marijuana plant, but only the bald suspicion of Officer Lambert supported the search for narcotics, narcotics paraphernalia, and amphetamines. Accordingly, I would affirm the trial court's ruling that there was probable cause to search for and seize the plant and would concur in the trial court's finding and ruling that probable cause did not exist to obtain a search warrant or to make an exploratory search of the entire apartment for anything else.

On the day that the search was made, Coon, who worked for a utility company in Fort Collins, was asked to repair the electric meter at 224 East Elizabeth Street. When he arrived, he saw a growing marijuana plant in the window. An occupant of the premises permitted him to enter after he identified himself, and no narcotics were seen by Coon inside of the house, except for one marijuana plant. Coon, who also served as an auxiliary police officer in Fort Collins, told Officer Lambert about the presence of one marijuana plant in the window of the house at 224 East Elizabeth Street. Lambert signed an affidavit which stated that Coon had seen three growing marijuana plants, when Coon had, in fact, told Lambert that he saw only one plant. The affidavit also contained Lambert's conclusion that there was concealed within the house other narcotics, dangerous drugs and implements and paraphernalia involved in drug use. His only basis for the assertion that narcotics apart from one marijuana plant were present on the premises was his conclusion that the items which he specified could generally be found whenever narcotics were seized in the search of a house.

The narrow issue which is before us is whether the information presented to the police to establish probable cause justifies the issuance of a warrant which directs an exploratory search for narcotics. We have not previously been called upon to address the question of the manner or the limitations of the scope of a search that is conducted pursuant to a limited showing of probable cause. A search predicated upon probable cause should be geared to reasonable limitations. Probable cause cannot be predicated upon mere speculation or suspicion. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

The police, in executing the search warrant, were entitled to

enter the premises, search for and find, if possible, the growing marijuana plant which Coon had seen and specifically identified. In this case, the police entered the defendants' apartment and found the growing marijuana plant in the precise location that Coon had described. Having found the plant, they proceeded to search the bedrooms which the defendants occupied, opened a tackle box and generally searched every part of the apartment for narcotics and narcotics paraphernalia.

In their search, the police officers transgressed upon and invaded a zone of privacy which could not be justified on the basis of Coon's information or Officer Lambert's conclusions. The mere presence of a growing marijuana plant does not grant the police the right to make an exploratory search of everything that is contained within a house. *Colo. Const.* Art. II, Sec. 7; *U.S. Const.* amend. IV. *See People v. McGahey,* 179 Colo. 401, 500 P.2d 977 (1972); *United States v. McMillon,* 350 F. Supp. 593 (D.D.C. 1972). *Compare Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The conclusion of Officer Lambert that narcotics paraphernalia and other narcotics could generally be found when a successful search was made for narcotics does not support the search warrant or the search which occurred in this case. The only basis for the assertion was the suspicion and conclusion that certain specified items were associated with and could be found whenever narcotics were seized in the search of a house. It is unreasonable to infer from the existence of one growing marijuana plant that the additional drugs and paraphernalia listed in the search warrant were present in the house. *Cf. Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). *See People v. Senkir,* 26 Cal.App.3d 411, 103 Cal.Rptr. 138 (1972).

This conclusion does not suggest that the police could not have seized any contraband that they came across in reasonably executing the search warrant. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). If other narcotics had been observed in executing the warrant, a broader search could have been conducted. However, the discovery of the growing marijuana plant did not justify the exploratory search.

Even though the search was overly broad, the seizure of the

marijuana plant complied with constitutional standards and prevents the suppression of that evidence. *United States v. Artieri,* 491 F.2d 440 (2nd Cir. 1974).

Accordingly, I would affirm the trial court's order suppressing all evidence seized in the course of the exploratory search, except for the marijuana plant.

MR. JUSTICE GROVES joins me in this dissent.