The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Benedico Guillermo CRESPIN, Defendant-Appellant.

No. 79CA0705.

Colorado Court of Appeals, Div. III.

Aug. 6, 1981.

Rehearing Denied Aug. 27, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele-Sernovitz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Ilene P. Buchalter, Deputy State Public Defender, Denver, for defendant-appellant.

SMITH, Judge.

Benedico Crespin appeals his conviction for possession of narcotic drugs in violation of § 12–22–302, and § 12–22–322(2)(b), C.R.S.1973 (1978 Repl.Vol. 5). We affirm.

The record reveals that for approximately eight months prior to Crespin's arrest, the Colorado Springs police force and the narcotics unit of the Organized Crime Strike Force had conducted extensive surveillance of one Frank Maestas and concluded that he was a dealer in heroin.

During these months, the police observed that prior to consummation of a sale, Maestas habitually performed a complicated ritual of evasive behavior. He would drive in his automobile for some time following a circuitous and unnecessarily complicated route, often waiting at traffic signals for four to five light changes, eventually culminating in a momentary meeting with his purchaser at a prearranged location where the transfer of drugs would take place.

On September 13, 1978, Officer Andrews of the surveillance team observed a meeting between Crespin and Maestas. Because this aroused his suspicions, he called a previously reliable informant who advised him that Benedico Crespin was purchasing heroin every four to five days and that he planned to drive to Colorado Springs to consummate a drug purchase on September 21. The informant gave Andrews the make, color, and license number of Crespin's car.

On September 15, Maestas was observed carefully examining the face of a tree at the back of his property. When Maestas left, officers dug at the loose dirt at the base of the tree and discovered what was later analyzed as heroin. Officers reburied all but a small portion of the heroin. The next day Maestas was observed at the same tree, and when he left, officers noted the heroin had been removed.

On September 21, while conducting an air surveillance of Maestas, Officer Butler observed Crespin in the parking lot of Monty's Bar. Thereafter, he watched both men, keeping the ground officers informed of their actions. The two men drove off in separate directions, each taking a circuitous route. Maestas followed his usual pre-sale ritual. Eventually, they met briefly in a secluded location, then parted. At that point, Andrews and another officer stopped Crespin's car and arrested him. A search conducted pursuant to that arrest yielded heroin.

I.

Crespin argues that the police lacked probable cause to arrest him and that the evidence seized pursuant to that arrest should therefore have been suppressed. We disagree.

■ The thrust of Crespin's first argument is that the information relied upon by police related only to Maestas and his conduct. He argues that his mere contact with Maestas is insufficient to establish probable cause to believe that he had committed any crime. We agree that mere association with one who commits or has committed crimes, standing alone, does not amount to probable cause for arrest. *People v. Branin*, 188 Colo. 235, 533 P.2d 1138 (1975). The record here, however, reflects much more than the mere presence of Crespin and Maestas at the same time and place.

The entire course of behavior of both men and the inferences to be drawn therefrom, together with any independent information which the police had, may be considered in determining whether they had probable cause to believe Crespin had in his possession illegal drugs. *Gonzales v. People*, 156 Colo. 252, 398 P.2d 236 (1965), *cert. denied*, 381 U.S. 945, 85 S.Ct. 1788, 14 L.Ed.2d 709 (1965). Officer Andrews had seen Crespin meeting with Maestas, near Maestas' house eight days prior to the day of the arrest. He was advised by a reliable informant in Pueblo that Crespin had been purchasing drugs every four to five days and that he planned another purchase on the twenty-first. Moreover, on the twenty-first, after the two met in the bar parking lot, Crespin left in a car fitting the informant's description, and he and Maestas went through the elaborate driving procedure previously described as Maestas' modus operandi, culminating in their again meeting in an isolated spot only to part again shortly thereafter. The reasonable inferences which could be drawn from the behavior of Maestas and Crespin, together with the information supplied by the informant, constituted probable cause for the warrantless arrest by Officer Andrews under the authority of § 16–3–102(1)(c), C.R.S. 1973 (1978 Repl.Vol. 8). *Gonzales v. People, supra.*

Although the extent of Officer Butler's knowledge is in dispute, Crespin asserts Butler, who was in the helicopter and ordered the arrest, did not have actual knowledge of the informant's tip and therefore lacked probable cause to issue such order. We find no merit to this argument. Officer Andrews who made the arrest had talked to the informant and had knowledge of all of the other facts; thus, whether Officer Butler was aware of the information given by the informant is immaterial. *See People v. Nanes*, 174 Colo. 294, 483 P.2d 958 (1971).

## II.

Crespin next contends that the trial court erred in denying his motion for a new trial because he asserts that one juror, Air Force Sgt. Kowalcyzk, was not a resident of the county as required by § 13–71–109(2)(a), C.R.S.1973. We again disagree.

The failure of a prospective juror to meet a qualification for jury service operates as a basis of a challenge for cause rather than as an absolute prohibition to service. *People v. Lewis*, 180 Colo. 423, 506 P.2d 125 (1973); *see* § 16–10–103(a), C.R.S. 1973. Accordingly, that challenge is waived if counsel does not use reasonable diligence on voir dire to determine if a challenge for cause exists. *People v. Lewis, supra; Austin v. People*, 106 Colo. 506, 107 P.2d 798 (1940).

Crespin acknowledges these principles of juror selection and takes the position that he exercised reasonable diligence by relying on Kowalcyzk's signed application for jury service that he was a resident, only later discovering that he was not registered to vote and did not have a Colorado driver's license.

The test for reasonable diligence is whether counsel availed himself of an opportunity to ascertain the disqualification. *Brown v. People*, 20 Colo. 161, 36 P. 1040 (1894). In his opening brief, defendant himself cites cases indicating that the term residence has no hard and fast legal definition, yet maintains he is entitled to rely on a lay person's understanding of that word as used in the jury questionnaire. The facts disclosed to Crespin, on voir dire, were that Kowalcyzk was a member of the armed forces, that he had lived in Colorado Springs for four years, that he hoped to remain there, though could not count on it, and that he considered himself a resident. Knowing that Kowalcyzk was in the Air Force, Crespin should, at the very least, have taken the opportunity on voir dire to inquire further into why Kowalcyzk considered himself a resident. This he did not do, nor did he raise the issue by attempting to exercise a challenge for cause. His failure to exercise these opportunities constitutes a waiver of the residency requirement.

Even now, there is no showing that Kowalcyzk was not a resident for the purpose of serving on a jury. All Crespin has done is raise the questions that should have been asked on voir dire, and which should have been resolved on a challenge for cause. The time has now passed for such consideration. *People v. Lewis, supra; Austin v. People, supra; Brown v. People, supra.*

Judgment affirmed.

KIRSHBAUM and TURSI, JJ., concur.