[Crim. No. 6588. Second Dist., Div. One. Sept. 30, 1959.]

THE PEOPLE, Respondent, v. RUTH WILLIAMS, Appellant.

William H. Neblett for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was charged by way of information with possession of heroin in violation of section 11500, Health and Safety Code, and three prior felony convictions. The trial court, sitting without a jury, found her guilty as charged and two prior convictions to be true; her application for probation and motion for a new trial were denied; and she was sentenced to the state prison. She appeals from the judgment of conviction and order denying her a new trial.

Appellant's main contention consists of an attack on the validity of the search of, and seizure of a quantity of heroin from, her person at the time of her arrest.

Construing the evidence most favorably to respondent, we set forth the pertinent facts leading up to defendant's arrest. On April 1, 1958, undercover narcotics Officer Renty went to the apartment of one Barnes for the purpose of "making a buy," and told him he "would like to cop one-half a piece of stuff." They drove in the officer's car to another residence to meet a man whom Barnes introduced as Chet, who also entered the car. The officer drove at Chet's direction to South Cimarron and West 54th Streets, where Chet told him to continue to drive around the block and he "would get the stuff for him." Chet walked into an alley which runs about 900 feet, from South Cimarron to South Wilton Place. While driving around the block Barnes told the officer that Chet was "getting the stuff from an old lady, about 60 years old, and the old lady had to be careful because she had just gotten out of jail eighteen months ago and that she had two Federal cases pending against her at the time." When Chet returned he said to the officer: "Man, it sure scared me to walk around with that much stuff. If they busted me now they would think I was a narcotic seller." On the way back to Chet's house, the officer wanted to stop for gas, but Chet told him not to, that "he had too much stuff" on him and didn't want to take the chance. When they arrived, Chet and Barnes went into the house alone. Shortly thereafter Barnes returned to the car and gave the officer an envelope containing heroin.

The officer immediately took the narcotic to the department and told Sergeant Stephenson, assigned to the narcotics de-

tail, all of the above details. Sergeant Stephenson was not personally acquainted with defendant, however, he knew her name and had previously ascertained she had a reputation as a narcotic peddler of rather large quantities, knew from police records she was 59 years old, sometimes referred to as 60; lived at 5417½ South Wilton Place, which fronts on the alley connecting South Cimarron Street and South Wilton Place, and had some charges of heroin possession pending against her; and had learned from a minimum of 20 persons, six of whom were reliable informants, that she engaged in the sale of narcotics and was selling from her residence and a hotel on 6th Street.

On April 17, 1958, Sergeant Stephenson gave Officer Renty $125 in marked money. The latter drove to Chet's home with Sergeant Nash concealed in the trunk of his car. Around 1 or 1:30 p. m. he saw Chet and told him he would like to "cop another half-piece of stuff" and gave him the $125. They drove to the area near West 54th Street and South Cimarron, to which they had gone on April 1, parking near the same alley entrance. Again Chet disappeared into the alley just south of West 54th Street. Ten minutes later he returned to the car empty handed and told the officer "the 'chick' had the stuff stashed somewhere in her apartment and she had to go dig it up," and he would have to go back in 10 minutes. He entered the alley a second time but when he returned to the officer he told him "the chick said that she didn't have $125 worth of stuff on hand and she had to go to a stash to get more stuff." After waiting 20 minutes Chet entered the alley a third time and returned saying "the chick hadn't gotten back yet" but he knew where she had gone and he could take him there to rush things a little. They drove a distance and the officer and Nash arrested him.

In the meantime, Sergeant Stephenson and another officer had driven to Arlington, just north of Vernon, where they observed Renty drive south with Chet in the front seat. Later they saw him drive by again, and after 10 more minutes, Renty and Sergeant Nash drove up with Chet in custody. Renty told Sergeant Stephenson what had just transpired and that Chet told him "she" did not have the stuff and was going to have to go get it and come back. Sergeant Stephenson then immediately drove to the alley and parked his car. Around 3 p. m. defendant rode by him into the alley in a car driven by her sister. As it came to a stop at the gate leading to defendant's home, which is in the alley 100 feet

south of the entrance on South Wilton Place, Sergeant Stephenson apprehended them, arrested defendant who was "clinching" her purse under her left arm and searched the handbag which contained a package of heroin. She told them it was hers and that when she left the house she had put it in her coin purse and had forgotten it.

In her defense, defendant's sister testified that on April 17, from 11:30 a. m. to the time of defendant's arrest, she had been with her continuously; that they prepared and ate a midday dinner at her house, after dinner watched television and at 2:30 p. m. went to a market, after which she drove defendant home; and that when the officers came upon them, they said nothing, forcibly grabbed defendant's bag and opened it. Defendant in her testimony denied the heroin was hers and that she had ever so admitted, and testified that she did not know Chet or anyone answering his description, that she was never out of the presence of her sister from 11:30 a. m. to 3 p. m., that the officers went into her home and searched it, and Sergeant Northrup kept her in the bedroom an hour asking about eastside payoffs and whether Federal narcotic officers had questioned her about them. On cross-examination she admitted several prior felony convictions.

At the close of the People's case the heroin seized at the time of defendant's arrest was received in evidence. Appellant contends that the search of, and the seizure of the narcotic from, her person were illegal; and that her objections to the officers' testimony and the admission of the narcotic into evidence should have been sustained, and her subsequent motion to strike the same should have been granted.

■ Since it was stipulated before the trial that defendant's arrest and the subsequent search of her person and seizure of the narcotic were made without a warrant, the burden was on the People to show justification for the arrest (*Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23]). If the record before us establishes the legality of defendant's arrest, then the search and seizure made incident thereto were proper. ■ "(A) search without a warrant is valid where it is incident to a lawful arrest, if it is reasonable and made in good faith; and (that) a seizure, during such a search, of evidence related to the crime is permissible. (Citations.)" (*People* v. *Winston,* 46 Cal.2d 151, 162 [293 P.2d 40].) In discussing the application of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], heavily relied upon by

appellant herein, the court in the Winston case, *supra*, 46 Cal.2d 151, said at page 162: "While the Cahan case held that 'evidence obtained by police officers in violation of federal and state constitutional prohibitions against *unreasonable* search and seizure is inadmissible,' it did 'not purport to inhibit the right of law enforcement officers to conduct a *reasonable* search and seizure incident to a valid arrest.' " This appears to dispose of appellant's argument, based on a long line of federal cases, if the officers' version of what occurred shows, incident to a valid arrest, reasonable search of defendant's person made in good faith, and the seizure of evidence relating to the commission of a crime.

Section 836, subdivision 3, Penal Code, provides that a peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a felony. ■ Whether there is reasonable cause for an officer's belief that one has committed a felony as to authorize arrest without a warrant must be measured by the facts presented to him at the time he is required to act (*People* v. *Hupp,* 61 Cal.App.2d 447 [143 P.2d 84] ; *People* v. *Vice,* 147 Cal.App.2d 269 [305 P.2d 270] ) and, of course, depends upon the individual circumstances in each case. Reasonable cause to justify an arrest may consist of information gained from others (*People* v. *King,* 140 Cal.App.2d 1 [294 P.2d 972] ; *Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36] ), and the test is "would a reasonable man, possessing the information possessed by the officer, reasonably believe that the person involved had committed a felony?" (*People* v. *Bates,* 163 Cal.App.2d 847, 851 [330 P.2d 102].) ■ Stated more particularly, reasonable cause to believe the person arrested has committed a felony sufficient to justify an arrest without a warrant implies such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest, strong suspicion that the person in question was guilty of a crime. (*People* v. *Woods,* 139 Cal.App.2d 515 [293 P.2d 901], cert. den., 352 U.S. 1006 [77 S.Ct. 566, 1 L.Ed.2d 550] ; *People* v. *Schraier,* 141 Cal.App.2d 600 [297 P.2d 81] ; *People* v. *Holguin,* 145 Cal.App.2d 520 [302 P.2d 635] ; *People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73].)

■ At the outset, this is not a situation in which law enforcement officers relied solely upon an informer to point an accusing finger, or one such as found in *Gascon* v. *Superior Court,* 169 Cal.App.2d 356 [337 P.2d 201] ; *Badillo* v. *Su-*

*perior Court,* 46 Cal.2d 269 [294 P.2d 23]; or *People* v. *Harvey,* 142 Cal.App.2d 728 [299 P.2d 310]; relied upon by appellant, in which, in addition to the seemingly innocent conduct of the defendant, there was little or nothing to involve him in criminal activity. This is a situation in which the arresting officer's information was based not on one but on a variety of sources, including law enforcement records, informants, police officers, and personal observation, training and experience, all corroborating each other in pointing to defendant, at the time of her arrest, as one carrying narcotics on her person. Of primary importance was the information supplied to Sergeant Stephenson by a fellow-officer who obtained it as the result of an illegal transaction in which he personally participated, all were criminally involved, and from which all hoped to profit. Neither Barnes nor Chet knowingly supplied information to an officer; as far as they were concerned he was just another person trying to "make a buy." Certainly they had nothing to gain by misrepresenting what they were doing, for ostensibly Renty, too, was engaged in nefarious narcotics activities, buying substantial amounts of heroin. The circumstances under which the officer obtained the information he gave to Sergeant Stephenson and upon which he obviously relied, were such as to lead any reasonable person to believe in the truth of what Chet and Barnes told him concerning the source and sale of the narcotic.

In addition, the officers involved were experienced narcotics officers, they knew the "lingo," habits, reputations and identity of numerous narcotic peddlers and users; they had access to the criminal record and files of suspects, informers and violators; and had the confidence of many informants who in the past had given them reliable information. The undercover operation of Officer Renty began primarily as an effort to "make buys" from Chet and Barnes. The first transaction led Renty to South Cimarron and West 54th Streets and the alley leading to South Wilton Place into which Chet, who indicated he had obtained a substantial amount of narcotics there, disappeared saying that was where he would get the "stuff." Barnes, who obviously knew much about Chet, having taken the officer to Chet's house, introduced him to the officer and had gone along with him into his house from which he returned to give the officer the heroin, told Renty that Chet was getting the heroin from a woman about 60 who had just gotten out of jail 18 months before and had a federal case pending against her. When Chet

emerged from the alley he indicated his fear in having obtained "that much stuff," did not want to delay going home so he would not be "busted" and after seeing Barnes alone gave the officer the heroin. This experience would lead a reasonable man to believe that Chet had obtained a substantial amount of narcotic from a 60 year old woman just out of jail 18 months who had a federal case pending against her, living in an alley between South Cimarron and South Wilton Place, who was peddling large amounts from her residence. This information Renty immediately conveyed to the arresting officer who was, through investigation, informants and police records, well acquainted with defendant's reputation as a narcotics peddler of large quantities and knew she was 59 years of age, but refered to as 60, lived at 5417½ South Wilton Place, had some possession charges pending against her, and was engaged in sales and peddling from a hotel on 6th Street and from her residence.

Even at this point, before the April 17 incident, the arresting officer might reasonably have deduced that defendant was the 60 year old woman from whom Chet had gotten a relatively large supply of heroin for Renty. However, after giving Renty $125 to make another buy through Chet on April 17, he kept the officer under surveillance; within less than two hours other events occurred which corroborated Sergeant Stephenson's belief that if he could stop defendant before she returned to her apartment to meet Chet to give him the heroin he would find it on her person. These incidents were related to the arresting officer by Renty immediately after they occurred and Sergeant Stephenson learned that Chet made three trips to an apartment, in the same alley in which a woman lived, to buy heroin, each time returning empty handed but with enough information to lead a reasonable person to believe that she did not have sufficient heroin on hand for a $125 buy, had gone out to get it at another "stash" and would return. From the information thus conveyed to him it is fair to assume that the officer then knew she had not yet had time to return to her apartment with the narcotic and immediately went to the alley entrance to await her return. When he saw her park in the alley in front of her address shortly thereafter, he arrested her in the belief she had the narcotic in her possession.

The question is not whether the arresting officer had reasonable cause to believe defendant was the person involved in the sale to Chet on April 1, or was the woman who was

dealing with Chet and who intended to supply him with the heroin on April 17, or any sale in fact took place between defendant and Chet in the alley; but whether the information he had at the time he arrested her constituted reasonable cause for him to believe defendant had heroin in her possession, thereby committing the felony for which she was arrested.

In arguing that as a matter of law the officers' version of what occurred does not constitute reasonable cause, appellant tends to construe the evidence and draw inferences therefrom as favorable to herself as she can, and presents for our consideration other interpretations, conclusions and hypothesis the trial court *could* have made. It is, of course, for the trial judge to weigh the evidence, resolve any factual conflict and determine the credibility of witnesses. He obviously rejected her defense and the hypothesis urged by defendant on the basis of the People's evidence, and accepted the officers' version of what occurred and every interpretation of the evidence favorable to the prosecution. We will not disturb the trial court's conclusions. Some of the contentions advanced by appellant in her brief would have been proper and constituted fair arguments before the trier of the fact, but have no place in her appeal in the absence of any showing of inherent improbability of the People's testimony.

In determining that there is sufficient evidence in the record to sustain, both as a matter of fact and law, the trial court's implied finding of reasonable cause to justify defendant's arrest without a warrant, we conclude that the search of her person and the seizure of the narcotic were valid as incident to her lawful arrest in that they were reasonable and made in good faith, and the narcotic taken from her related directly to the crime for which she was arrested. Although appellant discusses at length the force with which she claims the arresting officer seized her handbag, a review of the evidence discloses nothing unreasonable in his search, either to the extent or manner in which it was executed.

 Appellant urges that the failure of the prosecution to call Barnes or Chet as witnesses constitutes "evidence wilfully suppressed" which raises a presumption under section 1963, subdivision 5, Code of Civil Procedure, that had they been produced their testimony would have been adverse to the People. The argument lacks merit for the reason that the mere failure of the prosecution to call all of the witnesses in the presentation of its case does not constitute the wilful suppression of evidence contemplated to bring into play the

presumption under the section. ██ "There is no compulsion on the prosecution to call any particular witness . . . so long as there is fairly presented to the court the material evidence bearing upon the charge for which the defendant is on trial." (*People* v. *Wein*, 50 Cal.2d 383, at p. 403 [326 P.2d 457]). ██ We cannot say on the record before us that a fair presentation of the material evidence, either on the issue of reasonable cause or on the main charge of possession, was not made to the trial court; nor is there any showing therein that the prosecution intentionally concealed or made the witnesses unavailable, or that defendant could not have used them had she so desired.

For the foregoing reasons the judgment and order are and the same is each affirmed.

Fourt, Acting P. J., and Shea, J. pro tem.,* concurred.

A petition for a rehearing was denied October 21, 1959, and appellant's petition for a hearing by the Supreme Court was denied November 25, 1959.

*Assigned by Chairman of Judicial Council.