[Crim. No. 7866.   Second Dist., Div. One.   May 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID G. LUGO, Defendant and Appellant.

Ruffo Espinosa for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Peter H. Graber, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of selling heroin and an order denying a motion for a new trial.

In an indictment filed in Los Angeles County on February 17, 1961, the appellant was charged with a violation of section 11501, Health & Safety Code, in that on December 15, 1960, appellant sold heroin. Appellant was also charged with a prior felony conviction. He pleaded not guilty and denied

the prior conviction. A jury trial was properly waived and appellant was found guilty as charged and the prior conviction was found to be true.

A résumé of some of the facts is as follows: On or about the afternoon of December 15, 1960, Officer Martin, an undercover narcotics officer, was riding as a passenger in his automobile as it was being driven north on Broadway between Seventh and Sixth Streets in Los Angeles. Martin was seated to the right of the driver, Robert Mansfield. Two women, one known as Pat Haynes and the other as Ramona, were seated in the back seat of the automobile. Martin, who had been on the narcotics division assignment for six or eight weeks, saw appellant, who was walking on Broadway, at about 4:45 p. m., December 15, 1960. Pat Haynes called to appellant and invited him to enter the car, which he did, taking a seat to the right of Martin in the front seat. It was daylight and Martin observed appellant and his wearing apparel, and also noticed that appellant's teeth protruded somewhat. Appellant was introduced to Martin as "Louis." Upon entering the automobile appellant asked, "How much are you looking to score?" which meant in effect, "How much narcotics did you want to buy?" Pat Haynes answered, "We want to get two grams. We'll give you thirty five dollars" and appellant said, "I don't know how much I have at my stash, but I think I only have a gram and a half. Go down to Sixth and Main Streets." Mansfield, the driver, inquired of the appellant whether he had narcotics with him and appellant stated that he had a half gram of heroin. Martin offered appellant $9.50 for the half gram and appellant accepted the offer. Martin paid appellant the money and appellant thereupon took from his mouth a small balloon which was tied at one end and handed it and the contents thereof to the officer. During the conversation and the exchange the car was being driven from Broadway and Sixth Streets to Main and Sixth Streets. Martin observed the appellant quite closely. At Sixth and Main Streets Pat Haynes and appellant got out of the automobile.

Martin went to the police administration building, where he opened the balloon which had been given to him by the appellant. It contained five capsules holding a white powdery substance. The capsules and the balloon were marked with the officer's initials and the date and thereupon placed in a small manila envelope. That envelope was then placed in a larger envelope which was sealed with sealing wax.

A police forensic chemist received the sealed manila envelope from the central property division of the police department on December 16, 1960, and selected at random one of the capsules for examination. The tests disclosed that the capsule examined contained heroin. The chemist returned the items to the envelope, which was then sealed and returned to the property division of the police department. The material remained within the sealed envelope in the property division of the police department until it was presented to the grand jury. The envelope and contents were introduced into evidence as Exhibit 1 at the trial.

About two weeks after the sale of the heroin occurred Martin was shown by an informant a picture of a person known as "Apache" and Martin recognized the picture as being of one of the men who had made the sale of heroin to him. On February 18, 1961, Martin identified appellant at the police building and there talked to him.

In appellant's presentation of his defense he admitted to having been convicted of the possession of narcotics on a previous occasion and that he was using narcotics in December of 1960. However he stated that he was not in the vicinity of where the sale in question occurred, although he did not know where he was on the date of the sale.

Appellant now asserts that the chain of possession of the narcotics was inadequate, that the identification of appellant was inadequate, and that there is not competent evidence to sustain the judgment.

Appellant claims that there is a gap in the chain of possession from the time the officer sealed the contents of the balloon into the envelope to the time the chemist obtained the sealed envelope from the property division of the police department. There was no showing of any tampering with the envelope otherwise, and no questions were put to the officer by appellant's counsel on the now asserted gap. It is proper to presume that an official duty has been regularly performed unless there is some evidence to the contrary. (Code Civ. Proc. § 1963, subd. 15. See *People* v. *Pendarvis*, 178 Cal.App.2d 239, 241 [2 Cal.Rptr. 824] ; *People* v. *Heath*, 131 Cal.App.2d 172, 174 [280 P.2d 70] ; *People* v. *Coleman*, 100 Cal.App.2d 797, 801-802 [224 P.2d 837] ; *People* v. *Brown*, 92 Cal.App.2d 360, 365 [206 P.2d 1095] ; *People* v. *Reyes*, 133 Cal.App. 574 [24 P.2d 531].)

Appellant relies in great part upon some language contained in *People* v. *Riser* 47 Cal.2d 566, 580 [305 P.2d 1], to support

his contention. The facts of that case and the facts of the case before this court are in no sense comparable. In the *Riser* case there was evidence that the items in question were put in an open bookcase in an office which was shared by others, that the office was unlocked and flanked on one side by a hallway and on the other by an office shared by two or three persons. In *Riser* the defendant contended ". . . that in view of these facts the prosecution failed to establish continuous possession, which is a necessary foundation for the admission of demonstrative evidence; that since someone could have altered the prints or imposed wholly new ones during the four hours the glass and bottle were left unguarded in the book case, the prosecution has not sufficiently identified the prints as those that existed when the articles were removed from the bar. Defendant would require the prosecution to negative all possibility of tampering."

The court further said: "Undoubtedly the party relying on an expert analysis of demonstrative evidence must show that it is in fact the evidence found at the scene of the crime, and that between receipt and analysis there has been no substitution or tampering (see *People* v. *Coleman,* 100 Cal. App.2d 797, 801 [224 P.2d 837] ; 21 A.L.R.2d 1216, 1219, 1236-1237), but it has never been suggested by the cases, what the practicalities of proof could not tolerate, that this burden is an absolute one requiring the party to negative all possibility of tampering. (See, e.g., *People* v. *Brown,* 92 Cal.App.2d 360, 365 [206 P.2d 1095] ; *Commonwealth* v. *Mazarella,* 279 Pa. 465, 472 [124 A. 163].)

"The burden on the party offering the evidence is to show to the satisfaction of the trial court that, taking all the circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration.

"The requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received. Left to such speculation the court must exclude the evidence. (See *Dobson* v. *Industrial Acc. Com.,* 114 Cal.App.2d 782, 785 [251 P.2d 349] ; *McGowan* v. *Los Angeles,* 100 Cal.App.2d 386, 389-392 [223 P.2d 862, 21 A.L.R.2d 1206] ; *People* v. *Smith,* 55 Cal.App. 324, 327-329 [203 P. 816] ; *Novak* v. *District of Columbia,* 160 F.2d 588 [82 App. D.C. 95].) Conversely, when it is the barest speculation that there was tampering, it is

proper to admit the evidence and let what doubt remains go to its weight. (See *People* v. *Tomasovich*, 56 Cal.App. 520, 529 [206 P. 119]; *State* v. *Smith* (Mo.), 222 S.W. 455, 458-459.) In the present case defendant did not point to any indication of actual tampering, did not show how fingerprints could have been forged, and did not establish that anyone who might have been interested in tampering with the prints knew that the bottles and glasses were in Deputy Sheriff Lochry's book case. There was no error in the court's ruling."

Had the appellant any thought of raising the question of a gap in the chain of possession his opportunity was made available when the stipulation was being entered into concerning the testimony of the police chemist and the route followed or taken by the evidence from the time Martin secured it from appellant to the time of the testing or analysis by the chemist. There was no objection to the procedure which was followed, nor was there even an expressed thought that the powder analyzed by the chemist was not the same powder as purchased by Martin from the appellant. It is now too late to make any such objection.

It is not the duty of the prosecution in the ordinary situation where there is no objection to the receipt of the evidence to negative all possibility of tampering.

There is clear evidence in this case that the evidence in question is the heroin which was purchased from the appellant.

The burden is to satisfy the trier of fact that under all of the circumstances of the case and taking into account every factor it is reasonably certain that there was no alteration or tampering with the evidence. There is no showing of the slightest likelihood that the evidence in this case which was analyzed by the chemist is not the heroin which was purchased from the appellant.

Appellant also contends that he was not adequately identified; that the prosecution should have called Pat Haynes or one of the other persons in the automobile to testify with reference to what occurred. Martin was a percipient witness to the transaction. He had every opportunity to see and observe the appellant. The inference is clear that Martin readily recognized appellant at the time of his arrest as the person who had made the sale of heroin to him on December 15, 1960. The sale of narcotics requires only one witness. (*People* v. *Casado*, 181 Cal.App.2d 4, 8 [4 Cal.Rptr. 851]; *People* v. *Smith*, 174 Cal.App.2d 129, 134 [344 P.2d

435] ; *People* v. *Rodriguez,* 169 Cal.App.2d 771, 778 [338 P.2d 41] ; *People* v. *Sterling,* 162 Cal.App.2d 738, 739 [328 P.2d 462] ; *People* v. *McCrasky,* 149 Cal.App.2d 630, 635 [309 P.2d 115].)

Pat Haynes could have testified but her testimony would have been of no higher nature than that of the officer. The presumption of Code of Civil Procedure section 1963, subdivision 6, does not apply to the facts of this case. (*People* v. *McShann,* 177 Cal.App.2d 195, 198 [2 Cal.Rptr. 71] ; *People* v. *Williams,* 174 Cal.App.2d 175 [344 P.2d 45] ; *People* v. *Alexander,* 168 Cal.App.2d 753, 755 [336 P.2d 565] ; *People* v. *Taylor,* 159 Cal.App.2d 752, 756-757 [324 P.2d 715].)

██ There is no evidence in this case so far as the record discloses to show suppression of any evidence.

Appellant relies heavily upon *People* v. *Kiihoa,* 53 Cal.2d 748, 754 [3 Cal.Rptr. 1, 349 P.2d 673], however the facts of that case are in nowise similar to the facts in the instant case. Here the appellant was arrested approximately two months after the offense was committed. The police might very well have wanted to delay the arrest of appellant until the date it was made for fear of alerting other violators of police activity. Indeed the clerk's transcript shows that appellant's first appearance in court was with the defendants named in 31 secret indictments and 13 others, one of whom included Pat Haynes. There is no showing that any delay was engineered to the end that Pat Haynes or any other witness was to leave the state. There was no showing that the persons who were with Martin at the time of the purchase of the heroin were not available to testify had the appellant been of the mind to call any of them as his witness. (See *People* v. *Castedy,* 194 Cal.App.2d 763 [15 Cal.Rptr. 413].)

There was no statement made by the appellant at the time of trial to the effect that it would be more desirable to call a witness other than Martin as to what occurred.

With reference to the appellant's claim that the evidence is insufficient to support the conviction, a reading of the record, as heretofore indicated, belies any such claim.

The trial judge accepted the prosecution's identification evidence. It was for the trial judge to determine the credibility of the witnesses. (*People* v. *Williams,* 174 Cal.App.2d 175, 183 [344 P.2d 45] ; *People* v. *Muniz,* 172 Cal.App.2d 688, 691 [342 P.2d 53] ; *People* v. *Carr,* 170 Cal.App.2d 181, 183, 186 [338 P.2d 479] ; *People* v. *Diaz,* 160 Cal.App.2d 123, 133 [324 P.2d 887].)

The evidence of appellant's guilt in this case is crystal clear. He was fairly tried.

The order denying a motion for a new trial and the judgment are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.