Benny Dale **TRANTHAM**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A-17146.

Court of Criminal Appeals of Oklahoma.

April 3, 1973.

Rehearing Denied April 24, 1973.

Leon E. Tabor, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Charles L. Pain, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court of Oklahoma County, Case No. CRF-71-692, the appellant, Benny Dale Trantham, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Sale of Marihuana. His punishment was fixed at six (6) years imprisonment and he was assessed a fine of Two Thousand Five Hundred Dollars ($2,500.00). From that judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Officer Larry Osmond, an undercover narcotics investigator for the Del City Police Department, testified that on March 15, 1971, at approximately 8:15 p. m., he was on assignment at the Sonic Drive-In, 1701 Sunnylane, Del City, Oklahoma. While seated in his car at the drive-in, he observed a person from whom he had previously purchased marihuana approach and enter a white Ford convertible. He identified the defendant as the person seated behind the wheel of the convertible. Another person from whom Osmond had previously purchased marihuana met Osmond at Osmond's car. Osmond asked this person if he knew of someone who would sell him marihuana or pills with the person replying, "The boy in the white car had some". Thereafter, the person with whom Osmond talked had a brief conversation with the defendant in the defendant's car. The defendant, wearing a mustache and long hair, walked to Osmond's car and during a conversation between him and Osmond, the defendant stated he had one or two lids of marihuana. For the sum of Fourteen Dollars ($14.00), Osmond purchased one lid, aproximately one ounce, of a

green leafy substance he recognized as marihuana, contained in a small cellophane "baggie". The cellophane baggie, marked as State's Exhibit No. 1, was retained in Osmond's custody approximately fifteen or twenty minutes and delivered to Detective Cain of the Del City Police Department at Cain's residence.

Detective Cain testified that at approximately 9:00 p. m. on March 15, 1971, Osmond delivered to him State's Exhibit No. 1. Cain placed the bag in a State Crime Bureau evidence envelope, placing it in the property room of the Del City Police Department. Later, he delivered the envelope to the chemist's office at the Oklahoma State Bureau of Investigation.

John McAuliff, Oklahoma State Bureau of Investigation chemist, testified that State's Exhibit No. 1 was received by a secretary in his office in an evidence envelope sealed by Detective Cain. McAuliff testified the envelope contained a cellophane bag partially filled with a green leafy substance. He conducted a microscopic examination and Dequenois test on the substance with positive test results indicating the substance to be cannibus sativa, commonly known as marihuana. Thereafter, the State rested.

The defendant testified that he was employed as an apartment house maintenance man and was a journalism student at Central State University. Further, his general denial of selling to Osmond revealed that on the evening of March 15, 1971, at approximately 7:30 p. m., he ate supper with Robby Adkisson and John Rakowitz in his car at the Sonic Drive-In. During this period of time, he moved to Jim Tyner's car, also parked in the drive-in, and while talking with Tyner and other occupants of the vehicle, a person walked to Tyner's car and asked them if they knew where he could purchase marihuana. The defendant stated that he replied he didn't. Thirty minutes following, approximately 8:00 p. m., he left the drive-in with Jimmy Gist, "picked up some mag wheels" from a trade, returning to the drive-in approximately

thirty to forty-five minutes later. Finally, the defendant testified he had never worn a mustache nor long hair as he was in a strict National Guard unit, in which they were prohibited.

Jim Tyner and Robby Adkisson testified corroborating the defendant's testimony, substantiating all material parts of the defendant's testimony. Thereafter, the defense rested.

In this Opinion, the defendant's assignments of error will be considered in a different sequence than as presented in his trial brief. We first will consider counsel's assignments raised in his third proposition. In this proposition, he submits the trial court erred in admitting State's Exhibit No. 1 on the ground an unbroken chain of custody was not established and consequently, the exhibit was not properly admitted into evidence. In considering this contention, we should first note the evidence received pertinent to this question.

Officer Osmond's testimony unequivocally identified State's Exhibit No. 1 as the cellophane package of marihuana he purchased from the defendant and delivered to Detective Cain of the Del City Police Department. Detective Cain testified he placed State's Exhibit No. 1 in an Oklahoma State Bureau of Investigation, additionally noting on the envelope, the defendant's alias, given to him by Osmond at the time of the delivery, and delivered the envelope to the secretary at the Oklahoma State Bureau of Investigation chemist's office. McAuliff testified he opened the evidence envelope sealed by Officer Cain, removed State's Exhibit No. 1, and conducted the examination of the evidence.

■ In the case of Wagner v. Osborn, 225 Cal.App.2d 36, 37 Cal.Rptr. 27 (1964), the California Supreme Court decided this issue on facts similar to the facts in the case at bar. In this case, a deputy coroner testified he removed the deceased's body from the scene of a motor vehicle accident and removed a sample from the body. After removing the specimen, he placed it in a sealed vial and placed the vial in a sealed

evidence envelope. A highway patrol trooper testified he transported and delivered the envelope to the State Bureau of Investigation. The chemist who conducted the test testified he removed the envelope containing the vial from a refrigerator in his office, opened the envelope breaking the cellophane tape seal, and conducted the test. The court, in finding the chain of evidence sufficiently established to render the evidence admissible, stated as follows:

"It is true that the party offering demonstrative evidence must show to the satisfaction of the trial court that in reasonable certainty there had been no alteration of or tampering with the exhibit. (People v. Riser, 47 Cal.2d 566, 305 P.2d 1.) This burden, however, is not so absolute that all possibility of alteration must be negated. Even where there may be the barest speculation that tampering could have occurred, it is proper to admit the evidence and let what doubt there may be go to its weight. (People v. Riser, supra; see also People v. Lugo, 203 Cal.App.2d 772, 21 Cal.Rptr. 871; People v. Barquera, 208 Cal.App.2d 104, 25 Cal. Rptr. 45.) Although in the case at bench all persons who handled the envelope containing the specimen were not called as witnesses, the chain of possession was nevertheless substantially established, and the proof adequate to sustain the foundation for admissibility. * * *"

█ The above authority and the instant case are identical in that in establishing the chain of custody, the recipient of the evidence at the chemist's office did not testify at trial to his possession. Like the California court, we find the evidence of chain of custody in the instant case is sufficient to render the evidence admissible. The evidence of delivery to the chemist's office is uncontroverted. The receipt of the envelope and the handling of the evidence in the office are supported by the record to be within the scope of normal course of testing and the testimony of each and every person handling the evidence in the

office is unnecessary. Patterson v. State, 224 Ga. 197, 160 S.E.2d 815 (1968). The question raised under the circumstances in the instant case more properly refers to the weight to be given the evidence by the jury rather than its admissibility. United States v. Freeman, 412 F.2d 1181 (10th Cir. 1969). To hold otherwise would imply it necessary to have a postal employee who received evidence transported through the United States mail testify to his receipt of the package, which as a matter of practicality would place an impossible burden upon the State. We find the authorities in support of permitting evidence to be transported through the United States mail generally in support of this Court's decision on this issue.

█ In defense counsel's first proposition, it is suggested that Mr. Grove's arguments were improper and constituted grounds for reversal. In studying the record and arguments on each portion of the closing argument, we find that although they are unprofessional and in some instances erroneous, all errors referred to, if properly objected to by counsel at trial, could have been cured by the trial court by the trial judge admonishing the jury not to consider the prosecutor's comments. In the fifth paragraph of the Syllabus of Neal v. State, Okl.Cr., 506 P.2d 936 (1973), the Court stated as follows:

"When an objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the Motion for New Trial. When this is not done the defendant is deemed to have waived any objection unless the remarks are so fundamentally prejudicial that the court cannot, by instructions to the jury, correct such error."

The State's closing argument was presented with objection of defense counsel,

save one which is not relevant to the issues raised in this appeal. Considering these arguments could have been cured by the court's admonition, and considering the fact that no request for the above admonition was made by defense counsel nor any objection propounded to any part of the argument in question, we do not feel the improper arguments are of a magnitude to require modification since the verdict is bottomed on direct evidence clearly establishing defendant's guilt. Counsel for the defense, in the absence of fundamentally erroneous arguments, must give the trial court an opportunity to strike the arguments from the jury's consideration. We, therefore, find this proposition to be without merit.

 Counsel's third proposition asserts the punishment is excessive. We have repeatedly held the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case. In the instant case, the punishment imposed is within the range established by statute. Coupling the overwhelming evidence of the defendant's guilt with the facts and circumstances surrounding the offense, we find the punishment does not shock the Court's conscience. We have repeatedly held that unless the punishment shocks the conscience of this Court, we will not disturb the jury's verdict. Jackson v. State, Okl.Cr., 494 P.2d 358 (1972). We, therefore, find this proposition without merit.

The judgment and sentence is affirmed.

BUSSEY, J., concurs.

BRETT, J., concurs in part and dissents in part.

BRETT, Judge (concurring in part, dissenting in part).

While I concur in that part of this decision which reflects that the jury determined the guilt of the defendant, I respectfully dissent to the affirmance of the sentence which I believe is excessive.

Notwithstanding the fact that defense counsel did not object to the inflammatory and prejudicial statements in the prosecutor's closing argument, I believe they were fundamentally unfair and unnecessary. Defendant is correct when he asserts that marihuana is not defined as a drug, but the prosecutor's closing argument left that effect. While I do not find those comments referring to the "dope culture" so offensive, I do believe the prosecutor's closing statement, "I ask you to please not turn this *dope salesman* loose . . ." was plainly calculated to prejudice the jury.

Finally, it is most problematical that defendant will not possess $2,500, when he completes his penitentiary sentence; so, it appears unnecessary to impose such a heavy fine in order to later imprison the defendant for failure to pay it.