Richard Lee OZMENT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17839.

Court of Criminal Appeals of Oklahoma.

May 23, 1973.

Rehearing Denied June 18, 1973.

Jones, Atkinson, Williams, Bane, & Klingenberg, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Richard Lee Ozment, Appellant, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Case No. CRF–71–2530, for the offense of Illegal Sale of Marijuana, After Former Conviction of a Felony. His punishment was fixed at a term of thirty (30) years imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial Thomas Huey testified that on August 26, 1971, he was employed as an undercover agent for the Oklahoma City Police Department. At approximately 6:30 p. m. he met with Detectives Neil and Lovett and advised them of the possibility of purchasing contraband in Memorial Park from the defendant. He was given ten dollars in official city evidence money and the officers searched his person and his motorcycle. He proceeded to Memorial Park with the detectives following him. Upon entering the Park he joined a large group of people gathered there among whom was the defendant. He testified that he met the defendant the previous evening. The defendant asked him if he wanted to purchase a lid of marijuana.

He replied affirmatively and the defendant reached into his right front pants pocket, produced a clear plastic baggy containing a green leafy substance and handed it to Huey. Huey gave the defendant a ten dollar bill. He subsequently met Officers Neil and Lovett at a prearranged location and turned the plastic bag over to them. All three of them initialed the bag and placed it in an Oklahoma Bureau Investigation Evidence Envelope bearing seal number 4488. He identified State's Exhibits 1 and 2 as being the Evidence Envelope and the bag of the green leafy substance.

Officer Lovett testified that on August 26, 1971, at approximately 6:30 p. m. he and his partner, Officer Neil, searched Huey and his motorcycle, gave him a ten dollar bill and followed him to the park. They took up a watching position in the upstairs of the fire station at 36th and Western from which they could see most of Memorial Park. Using binoculars he observed Huey enter the park and sit down with a group of people. He observed Huey make a motion as if handing defendant ant an object and defendant was observed to make a motion as if handing something to Huey. They subsequently met Huey at a prearranged location and Huey gave them a bag of green leafy substance. The bag was placed in a Crime Bureau Evidence Envelope which was sealed with an Oklahoma City Police Department Evidence Seal number 4488. He identified State's Exhibits 1 and 2 as being the Evidence Envelope and the green leafy substance. The exhibits were transported to the Oklahoma City Police Department and placed in a safe in the station captain's office.

Officer Neil's testimony did not differ substantially from the testimony of Officer Lovett.

Officer Breeden testified that he was in charge of the Property Room of the Oklahoma City Police Department. That on August 27, 1971, he removed State's Exhibit 1 from a safe in the station captain's office and retained possession of the same

until August 31, 1971, when he released the exhibit to Officer Willis. He testified that the envelope was sealed.

Detective Willis testified that he received State's Exhibit 1 on August 31, 1971, from Officer Breeden and delivered it to the State Bureau of Investigation. On cross-examination he testified that he either handed the exhibit to the Chief Chemist John McAuliff or to the secretary.

John McAuliff testified that he was the Chief Chemist for the Oklahoma State Bureau of Investigation. He testified that on September 24, 1971, he removed State's Exhibit 1 from the Evidence Locker. The exhibit was sealed and bearing seal number 4488. He testified that he performed certain tests on the substance contained in State's Exhibit 1 and that in his opinion the contents of the, State's Exhibit 2, was marijuana.

For the defense Kerry Jones testified that he was with the defendant on August 26, 1971, from 6:00 p.m. to about 10:30 p. m. He said that he and defendant were at Ben Hill's apartment and that neither he nor defendant went to Memorial Park. He further testified that to his knowledge he had never seen the defendant in Memorial Park.

In rebuttal Thomas Huey testified that he had observed defendant and Kerry Jones together at Memorial Park in October of 1971.

The previous conviction was stipulated.

■ The first proposition asserts that the verdict is excessive and appears to have been given under the influence of passion or prejudice, caused by prejudicial testimony and argument during trial. This proposition is well taken. The record reflects that on direct examination of the witness Huey the following transpired:

"Q. At this time, on the date of August the 26th 1971, did you know the defendant?

"A. Yes, ma'am.

"Q. Where had you met him?

"A. I met him at a drug party the evening before.

MR. JORDAN: Your honor, I am going to object to that as a harpoon and ask for a mistrial at this time.

THE COURT: Excuse me; would counsel approach the bench?

(Thereupon, a conference is had at the bench.)

THE COURT: Ladies and gentlemen of the jury, you are admonished to disregard the last response of this witness, which was not called for by the question that was asked of him; and the witness is admonished to directly answer the questions without volunteering any statements. And if you have any questions about it, I want you to visit with Mrs. Hirst about it because if you make any other such voluntary statements, you will be in serious trouble with me. The motion for a mistrial is overruled and exceptions allowed." (Tr. 20–21).

In Green v. State, Okl.Cr., 481 P.2d 805 (1971), we stated:

"It has been the practice of this Court that in cases involving 'evidentiary harpoons' where guilt hangs fairly close in the balance, to grant a new trial, while in cases where guilt is strongly established and a new trial would undoubtedly result in conviction, this Court will reduce the sentence."

 The final proposition contends that the trial court erred in allowing State's Exhibits 1 and 2 into evidence because a proper chain of custody was not established. We disagree. Agent Huey testified that he purchased State's Exhibit 1 and 2 from the defendant and subsequently delivered it to Officer Lovett and Neil. All three initialed and dated the plastic bag and it was sealed in an Oklahoma Bureau of Investigation Evidence Envelope bearing seal number 4488. Officers Lovett and Neil testified that they received State's Exhibit 1 from Agent Huey. Both officers initialed the exhibit and placed it in State's Exhibit 1 which was sealed with number 4488. Lovett transported it to the police station and placed it in a safe place in the station captain's office. Officer Breeden testified that he removed the exhibit from the safe in the captain's office and retained custody of the same until it was delivered to Officer Willis, the seal remaining unbroken. Officer Willis testified that he received the exhibit from Officer Breeden and delivered it to the State Bureau of Investigation where it was turned over either to John McAuliff or the secretary. John McAuliff testified that he removed the exhibit from the Evidence Locker at the Crime Bureau and that the exhibit was sealed with Oklahoma City Police seal number 4488.

In dealing with a similar question in the recent case of Trantham v. State, Okl.Cr., 508 P.2d 1104, we cited with approval the case of Wagner v. Osborn, 225 Cal.App. 36, 37 Cal.Rptr. 27 (1964) wherein we stated:

"The court, in finding the chain of evidence sufficiently established to render the evidence admissible, stated as follows:

'It is true that the party offering demonstrative evidence must show to the satisfaction of the trial court that in reasonable certainty there had been no alteration of or tampering with the exhibit. (People v. Riser, 47 Cal.2d 566, 305 P.2d 1.) This burden, however, is not so absolute that all possibility of alteration must be negated. Even where there may be the barest speculation that tampering could have occurred, it is proper to admit the evidence and let what doubt there may be go to its weight. (People v. Riser, supra; see also People v. Lugo, 203 Cal.App.2d 772, 21 Cal.Rptr. 871; People v. Barquera, 208 Cal.App.2d 104, 25 Cal.Rptr. 45.) Although in the case at bench all persons who handled the

envelope containing the specimen were not called as witnesses, the chain of possession was nevertheless substantially established, and the proof adequate to sustain the foundation for admissibility. * * *'

"The above authority and the instant case are identical in that in establishing the chain of custody, the recipient of the evidence at the chemist's office did not testify at trial to his possession. Like the California court, we find the evidence of chain of custody in the instant case is sufficient to render the evidence admissible. The evidence of delivery to the chemist's office is uncontroverted. The receipt of the envelope and the handling of the evidence in the office are supported by the record to be within the scope of normal course of testing and the testimony of each and every person handling the evidence in the office is unnecessary. Patterson v. State, 224 Ga. 197, 160 S.E.2d 815 (1968). The question raised under the circumstances in the instant case more properly refers to the weight to be given the evidence by the jury rather than its admissibility. United States v. Freeman, 412 F.2d 1181 (10th Cir. 1969). To hold otherwise would imply it necessary to have a postal employee who received evidence transported through the United States mail testify to his receipt of the package, which as a matter of practicality would place an impossible burden upon the State. We find the authorities in support of permitting the evidence to be transported through the United States mail generally in support of this Court's decision on this issue."

In conclusion, we observe that justice would best be served by modifying the judgment and sentence to a term of fifteen (15) years imprisonment and as so modified the judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.