Danny Lynn **SWENSON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–268.

Court of Criminal Appeals of Oklahoma.

Aug. 16, 1974.

Rehearing Denied Sept. 6, 1974.

Jack L. Shears, Jr., Shears & Shears, Ponca City, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., Jeannette Haag, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, Danny Lynn Swenson, hereinafter referred to as defendant, was charged, tried and convicted by a jury in the District Court of Kay County for the crime of Distributing Marijuana. The jury returned a verdict of guilty and assessed his punishment at an indeterminate sentence of a minimum of 3 years and a maximum of 6 years, and a fine of $3,500. From a judgment and sentence consistent with said verdict the defendant has perfected his timely appeal.

The evidence adduced at trial is essentially as follows: Randol Wayne Clodfelter, a forensic chemist from the Oklahoma

State Bureau of Investigation, testified that on February 27, 1973, he removed an evidence envelope from a locker in the State Crime Bureau and examined the contents. He identified State's Exhibit No. 1 as the envelope he examined and its contents. He described the contents of the envelope as being one large baggie, with four small plastic baggies of green leafy substance therein. The larger baggie was sealed, and attached thereto was an identification card. His examination of the contents of each of the four baggies found each to contain cannabis sativa, or marijuana.

Thomas J. Key, an officer with the State Bureau of Investigation, identified State's Exhibit No. 1 as that received from Sheriff Coffelt, in the latter's office in Kay County on December 20, 1972. He locked the sealed envelope in the trunk of his car and transported it to the Oklahoma State Bureau of Investigation on December 22, 1972. Once at the Oklahoma State Bureau of Investigation he handed the evidence envelope to the evidence clerk who assigned an "evidence number" to the envelope.

Norman Coffelt, Sheriff of Kay County, testified that he arranged for Officers Ron Wilson and Mike Rankin, of the City of Arkansas City, to assist him in undercover narcotics investigation. He was informed on December 17, 1972, by Wilson and Rankin that a Mr. Danny Lynn Swenson, defendant, was suspected of distributing marijuana. On December 17, 1972, Sheriff Coffelt gave to Officer Wilson a twenty dollar bill and two ten dollar bills that were marked and whose serial numbers were recorded. Officer Wilson was instructed by the Sheriff to buy marijuana with these bills.

On December 18, 1972, while the Sheriff was observing defendant's residence, he saw Officer Wilson's automobile with four passengers, including Wilson and Rankin, approach and stop outside of the defendant's home. Defendant joined the foursome, and the car left the area, returning sometime later. At that time, Sheriff Coffelt observed two occupants of the Wilson vehicle get out of the car and return to defendant's house. The Wilson car then left the area. Sheriff Coffelt shortly thereafter received a call from Officer Rankin on a police "walkie-talkie" that he had "made contact" and that they would return to the Swenson home. Coffelt observed the Wilson vehicle return to defendant's residence, and all occupants went inside the home. Fifteen minutes later, Wilson, Rankin, defendant, and the two other suspects emerged from defendant's home and returned to the Wilson vehicle which left the area. Coffelt followed and he subsequently received another call from Rankin stating that the officer had "made the buy" from defendant and informed the Sheriff of their present location. The Sheriff then proceeded to the area to arrest the defendant. A search of the defendant found $50.00 on his person in the form of one twenty and three ten dollar bills. Coffelt checked the serial numbers of the bills and found that they corresponded to bills given to Officer Wilson for the marijuana purchase, one ten dollar bill being a marked bill that belonged to Officer Wilson that the Sheriff had seen earlier. Officer Wilson produced at the arrest scene four baggies of leafy green substance.

Sheriff Coffelt returned to his office accompanied by Deputy Sinclair, Wilson, Rankin, defendant, and the two other occupants that were arrested at the scene. Coffelt then placed the four baggies of green leafy substance into one large bag. He prepared an evidence card, signed it, and had Officers Rankin and Wilson sign their names, attaching the card to the larger bag. He identified the four baggies contained in State's Exhibit No. 1 as being similar to the ones placed in a large baggie at his office. The large bag was then placed into an evidence envelope, sealed, and placed in his office vault. He identified the large bag and the evidence envelope contained in State's Exhibit No. 1 as the one he used. On December 20, 1972, he gave to Mr. Tom Key the evidence en-

velope for transportation to the Oklahoma State Bureau of Investigation. Sheriff Coffelt stated that he did not receive the evidence back until the preliminary hearing and it had since been in his possession and control.

Gary Sinclair, Deputy Sheriff of Kay County, then testified that he assisted Sheriff Coffelt on December 17 and 18, 1972. His testimony of events prior and up to the arrest of defendant was similar to the testimony given by Sheriff Coffelt. He was not present in the Sheriff's office when the baggies were marked and placed into the evidence envelope.

Officer Michael F. Rankin testified as to his assignment with Officer Wilson to Sheriff Coffelt in Kay County. He came in contact with a Mr. Peddigo and a Mr. Cline in Tonkawa and learned from them the name and address of the defendant in Ponca City. Wilson and Rankin went to defendant's home where Wilson talked to the defendant. Later the same day he was picked up by Wilson, who was in the company of Peddigo and Cline, and taken to the defendant's home. Defendant then joined the foursome in the Wilson vehicle and Rankin observed that the defendant produced three marijuana cigarettes for all the occupants to smoke. Discussion ensued as to the price and quality of the marijuana defendant had to sell and defendant stated that he wanted to check them out and that driving around would assist him in that evaluation. Defendant then instructed Wilson and Rankin to return to his house and stated "he was going to his stash to pick up some stuff and bring it back to the house." Rankin had Wilson drive to a gas station and called the sheriff on his "walkie-talkie", informing him of the impending purchase of marijuana. They subsequently returned to the defendant's home and Rankin was present when the defendant sold five baggies of green leafy substance to Wilson. Rankin observed Wilson tender $50.00 and place it on defendant's bedroom dresser. Defendant then produced five baggies of alleged marijuana from a shoe box and placed

these on the same dresser. One baggie was then given to Cline by Wilson, and the other four were placed in Wilson's boots. Rankin then persuaded the defendant, Peddigo and Cline, to accompany the officers for another ride, to which they all consented. Rankin asked Wilson to stop at a grocery store so he could allegedly get some beer. Once inside, he contacted Sheriff Coffelt concerning the purchase and gave him the location of the grocery store. Shortly thereafter, Coffelt arrived and placed the defendant under arrest. Rankin observed the search of the defendant and removal of the $50.00 in marked bills. They then followed the sheriff to his office where Wilson turned four baggies over to the sheriff. Rankin witnessed the placing of the four baggies of green leafy substance into the larger baggie by the sheriff. Then he signed his name to an evidence tag, witnessed the sheriff's signature and the signature of Wilson. Rankin then testified that he saw the sheriff staple and seal the larger bag and staple the evidence card thereto. Rankin testified that State's Exhibit No. 1 contained the same large bag and tag that he signed on December 18, 1972, and that the four baggies within State's Exhibit No. 1 appeared similar to those purchased from the defendant.

Officer Ronald H. Wilson testified as to his undercover work with Sheriff Coffelt in the months of November and December, 1972. He stated that he met Cline and Peddigo, who informed him of defendant's name and address. He went to the defendant's home and informed the defendant that Cline and Peddigo had sent him. Wilson then testified as follows:

"Q. What happened after you told him you had been referred to him by Doug Cline and Steve Peddigo?

A. Well, I didn't really know what to say right away, and I just tried to talk about anything but what I was after, and he finally interrupted me and asked me, 'Do you want to buy some drugs?'

Q. Who did that?

A. Mr. Swenson.

Q. He asked you, 'Do you want to buy some drugs?'

A. Yes, sir.

Q. Had drugs been mentioned up to that time?

A. No, sir.

Q. Then he first initiated the conversation about drugs, is that correct?

A. Yes, sir.

Q. What did you say when he asked you that?

A. I told him 'Yes', that I was interested in buying some marijuana.

Q. And then what did he say, if anything?

A. He acted hesitant. He said he had some, but he would rather me bring Steve Peddigo and Doug Cline with me and come back the next day.

Q. Did he say why he wanted you to come back the next day and bring them with you?

A. He said that there had been quite a bit of heat on him. The police had tried to catch him before, but he had outsmarted them some way. I didn't know exactly what that case was about.

Wilson then left defendant's home after stating he would return with Cline and Peddigo. On the 18th of December he was given $40.00 by the sheriff to purchase the marijuana. Wilson showed the sheriff another marked ten dollar bill that he intended to use in the sale. On December 18 Wilson picked Rankin, Cline and Peddigo up and went to the defendant's home. Wilson's testimony from this point was similar to Rankin's concerning what transpired up until the arrest. Wilson stated that the same $50.00 he gave to the defendant for the purchase of marijuana was removed from the defendant after his arrest. Wilson then described the chain of custody of the evidence and testified that State's Exhibit No. 1 contained the evidence card that he signed on December 18 and that the large bag was the same in which the four smaller baggies of leafy green substance were placed on that date. The State then rested and the defendant presented no evidence.

■ The defendant's first proposition in error urges that the trial court committed reversible error in failing to instruct as requested on the lesser included offense of possession of marijuana all pursuant to 22 O.S. § 916. An examination of the record reflects that there is no evidence whatsoever to refute the allegations of the information relating to the distribution of marijuana. There seems to be no doubt that a substance was sold and that the substance was marijuana.

In Palmer v. State, Okl.Cr., 327 P.2d 722, this Court held, citing Murphy v. State, 79 Okl.Cr. 31, 151 P.2d 69, that if there be no evidence whatever to refute the allegations of the information then the defendant would not be entitled to an instruction that would permit the jury to find the defendant guilty only of the lesser included offense. An instruction on a lesser included offense must be justified by the evidence presented. Therefore, it is our opinion that no substantial right of the defendant was violated for failure to instruct on the lesser included offense and that the defendant's first proposition is without merit. It should be further noted that the jury did not assess the minimum penalty required by law, and properly so under the evidence as presented.

■ The defendant's next proposition argues that the trial court erred concerning its instruction to the jury with reference to an indefinite sentence. More particularly the defendant urges that under the provisions of 57 O.S.Supp.1970, § 353 the trial court should not have placed a minimum limit in its indefinite sentence instruction to the jury. In support of this argument the defendant makes reference to the emphasized portion of § 353:

"In all cases where a sentence of imprisonment in the penitentiary is imposed, the court in assessing the term of the confinement may fix a minimum and a maximum term, both of which shall be within the limits now or hereafter pro-

vided by law as the penalty for conviction of the offense. The minimum term may be less than, but shall not be more than, one-third of the maximum sentence imposed by the court. Provided, however, that the terms of this act shall not limit or alter the right in trials in which a jury is used for the jury to assess the penalty of confinement and fix a minimum and maximum term of confinement, *so long as the maximum confinement be not in excess of the maximum term of confinement provided by law for conviction of the offense.*"

However, the defendant failed to consider that portion of § 353 which reads as follows:

" . . . both of which shall be within the limits now or hereinafter provided by law as the penalty for conviction of the offense."

Section 353 is a general statute concerning the sentencing power of the courts. Such a general statute must be construed and applied in light of and within the limits of those specific statutes which provide a specific punishment for a specific crime. Therefore, defendant's second proposition is without merit.

■ Defendant next urges that the State failed to establish that the material obtained from defendant was marijuana. We deem it only necessary to state that the evidence recited heretofore substantially establishes the chain of possession and proof adequate to sustain the foundation for admissibility. See Trantham v. State, Okl.Cr., 508 P.2d 1104 and Ozment v. State, Okl.Cr., 510 P.2d 1002.

A state chemist testified from his record made, kept and preserved in the ordinary course of his business that the substances contained in the four bags in State's Exhibit No. 1 were marijuana. Therefore, any question concerning the chain of possession, the possibility of tampering, and the chemical identity of the substance contained in the exhibit is a matter of weight and credibility to be determined only by the jury. Said proposition is without merit.

■ The defendant next urges that the trial court committed reversible error in allowing Officer Wilson to testify as to the defendant's statements concerning his prior relationships with the police. During the trial Officer Wilson, in response to the following question, stated:

"Q. Did he say why he wanted you to come back the next day and bring them with you?

A. He said that there had been quite a bit of heat on him. The police had tried to catch him before, but he had outsmarted them someway. I didn't know exactly what that case was about."

It is this Court's opinion that the defendant's statement set out above did not constitute an admission of prior bad acts, but was merely a statement reflecting the defendant's apprehension of selling marijuana to a stranger. Said statement reflects the defendant's state of mind during the time when he was sizing up a prospective purchaser and further reflects his consciousness of the illegality of the proposed sale. It is further noted that no specific prior bad act or criminal conviction is acknowledged by the defendant's statement. It is therefore our opinion that the defendant's statement was properly admissible in evidence and, by reason thereof, it was proper for the prosecuting attorney to refer to said statement in his closing argument.

■ Defendant's next proposition argues that the trial court committed reversible error in allowing the prosecuting attorney to refer to marijuana as a "drug" or "narcotic" and to use words such as "pushers," "peddlers," and "sub-culture of drugs and dope." An examination of the record with reference to those instances raised by the defendant in his brief reflects that most instances arose out of the officers trying to explain why they had to work as undercover agents and had to simulate the use of marijuana in order to gain the confidence of informers and suspects

alike. We find nothing in the record to reflect that the use of the words objected to in the instant case in the manner in which they were used as fundamentally prejudicial to the rights of the defendant. The evidence of guilt is clear and said proposition is without merit.

■ The defendant's last proposition in error contends that the following statement made by the prosecuting attorney on closing argument was fundamentally prejudicial to the rights of the defendant:

" . . . The law covers that safeguard. It talks about delivery; it says either actual or constructive. If he had got on the telephone and called Wilson and told him where that marijuana was, that is a constructive delivery. So him laying it out on the chest and then picking up the money afterwards, that don't cut no ice. If it had, the judge would have told you and this case would never have gotten this far, if that's not marijuana; if it's not properly traced by all of this chain of evidence, of testimony, if there had been a hiatus or a gap anywhere, you would not have received it."

The statement of the prosecuting attorney is improper and in a case wherein there is conflicting evidence it might require reversal. However, as stated above the evidence of guilt is, in the instant case, overwhelming, and it therefore cannot be said that the statement complained of, in this specific case, was so prejudicial to the rights of the defendant as to warrant reversal. Schneider v. State, Okl.Cr., 501 P. 2d 868.

■ However, in light of the error and under authority of 22 O.S.1971, § 1066, we feel the judgment and sentence should be modified from that pronounced to an indeterminate sentence of a minimum of three (3) years and a maximum of six (6) years and a fine of One Thousand ($1,000.00) dollars, and as modified, the judgment and sentence is affirmed.

BUSSEY and BRETT, JJ., concur.