**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Andrew Lee OROZCO, Defendant–**
**Appellant.**

No. 00CA1790.

Colorado Court of Appeals,
Div. IV.

May 9, 2002.

Ken Salazar, Attorney General, Michelle L. Prince, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

David S. Kaplan, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

Opinion by Judge MARQUEZ.

Defendant, Andrew Lee Orozco, appeals the judgment of conviction entered upon jury verdicts finding him guilty of unlawful possession of a schedule II controlled substance (methamphetamine), possession of drug paraphernalia, and possession of less than one ounce of marihuana. We reverse and remand for a new trial.

## I.

Defendant argues that the trial court erred by denying his challenge for cause to a prospective juror who did not understand the English language. We agree.

Section 13-71-105(2)(b), C.R.S.2001, provides that a prospective juror shall be disqualified if that individual is unable to "read, speak, and understand the English language." Whether a prospective juror should be disqualified under this provision is a question of fact, and the trial court's determination of the issue will not be disturbed on appeal unless it is unsupported by the record. *People v. Duncan*, 33 P.3d 1180, 1181-82 (Colo.App.2001)(record support for trial court's finding that prospective juror's fluency in English was sufficient for service where prospective juror merely expressed difficulty understanding questions that included legal concepts, without ever stating that she was unable to understand English).

The failure of a prospective juror to meet a qualification for jury service operates as a basis for a challenge for cause rather than as an absolute prohibition to service. Section 16-10-103(1)(a), C.R.S.2001; *People v. Crespin*, 635 P.2d 918, 920 (Colo.App.1981).

When a trial court erroneously denies a challenge for cause to a prospective juror, the defendant uses a peremptory challenge to remove that juror, and the defendant exhausts all available peremptory challenges, the trial court's ruling affects a substantial right of the defendant and cannot be deemed harmless error. *Carrillo v. People*, 974 P.2d 478, 486-87 (Colo.1999).

We review a trial court's ruling on a challenge for cause for abuse of discretion. To determine whether the trial court abused its discretion in ruling on a challenge for cause, the entire voir dire of the prospective juror must be reviewed by the appellate court. *Carrillo v. People, supra*, 974 P.2d at 485-86.

The prospective juror at issue here completed a written questionnaire in which she indicated: "I sometimes have difficulty understanding English (my husband helped fill this out)."

At the beginning of voir dire, the court inquired about the prospective jurors' language abilities:

THE COURT: Are all of you able to read, speak, and understand the English language?

(All prospective jurors replied in the affirmative.)

THE COURT: And the only reason why I ask that, if someone is not—we do have the ability to bring in an interpreter if the circumstances warrant.

(Prospective juror raised hand.)

THE COURT: All right. Tell me your name, ma'am.

PROSPECTIVE JUROR: [Prospective juror states her name.]

THE COURT: And, [prospective juror], how long have you lived in the United States?

PROSPECTIVE JUROR: Ten years.

THE COURT: How long?

PROSPECTIVE JUROR: Ten years.

THE COURT: So is English your second language?

PROSPECTIVE JUROR: Yes.

THE COURT: It sounds like you were able to communicate fairly well with us up to now; is that right?

PROSPECTIVE JUROR: Yes. Sometimes I have—it's hard to understand.

THE COURT: Okay. Well, what you can do, [prospective juror], if there is something that you don't understand, you raise your hand and let us know, either during the questioning now or during the course of the testimony, and we will make sure that the question is repeated or the answer explained to you. We want people from all walks of life and from all kinds of background to serve on our juries.

And if we are able to explain something you don't understand, would you be able to otherwise, do you think, follow the proceeding, if we stop and explain things to you, if needed?

PROSPECTIVE JUROR: Somebody explain.

THE COURT: Okay. Well, you need to let us know if there is something that occurs that needs explaining, and we will certainly do that. Okay? Thank you, [prospective juror].

The following exchange then occurred during the prosecutor's questioning:

PROSECUTOR: Has anybody here not heard of the drug methamphetamine—

(No verbal response.)

PROSECUTOR:—otherwise referred to crystal meth or crack? Everybody has heard of that drug? [Prospective juror], have you heard of crystal meth? You've heard of that drug?

PROSPECTIVE JUROR: My girlfriend, she is high school, and talked about cocaine and marijuana.

PROSECUTOR: You knew somebody who had a court case where she was accused of having cocaine?

PROSPECTIVE JUROR: No, no, her daughter, high school.

PROSECUTOR: I apologize. I'm not sure if you knew somebody who knew somebody who had cocaine—

PROSPECTIVE JUROR: Yes, and her daughter talked about it.

PROSECUTOR: Okay. And you're familiar with the war on drugs in America?

PROSPECTIVE JUROR: Yes.

PROSECUTOR: Do you mind if I ask where you are from?

PROSPECTIVE JUROR: Korea.

PROSECUTOR: Korea?

PROSPECTIVE JUROR: (Nods head.)

PROSECUTOR: Were drugs illegal there?

PROSPECTIVE JUROR: Yeah.

PROSECUTOR: Also illegal, so you're familiar with that?

PROSPECTIVE JUROR: (Nods head.)

PROSECUTOR: And do you think it's a good idea that drug cases are prosecuted?

PROSPECTIVE JUROR: (Nods head.)

Defense counsel subsequently asked the prospective juror additional questions about her ability to understand the proceedings:

DEFENSE COUNSEL: Does anybody disagree with that or think, "Well, I don't know why they would bring a case against him if he was innocent"? What about you, [prospective juror]?

PROSPECTIVE JUROR: Yes.

THE COURT: [Prospective juror], make sure you keep your voice up so—my court reporter has to be able to hear what you say. Thank you.

DEFENSE COUNSEL: And I'm not trying to single you out, [prospective juror]. Have you been understanding what's happening?

PROSPECTIVE JUROR: Sometimes.

DEFENSE COUNSEL: Are you having a little difficulty?

PROSPECTIVE JUROR: Yes.

DEFENSE COUNSEL: When I'm talking about "presumption of" and "beyond a reasonable doubt," were those terms—are you having a hard time understanding those because of the language?

PROSPECTIVE JUROR: Yes.

DEFENSE COUNSEL: Okay. Are you feeling uncomfortable sitting here and possibly being a juror when you are not understanding everything that is going on?

PROSPECTIVE JUROR: Yes.

DEFENSE COUNSEL: Do you have a serious doubt about your ability to be a good juror in this case?

PROSPECTIVE JUROR: Yes.

Based on these responses, defense counsel challenged the prospective juror for cause on the ground that she did not understand English. The prosecutor did not dispute defense counsel's assessment of the prospective juror's ability to understand English. Instead, the prosecutor urged the court to deny the challenge and "get an interpreter."

The following exchange then occurred:

THE COURT: [Prospective juror], again, we talked before. Have you been able to follow the general context of the conversation up to this point in time?

PROSPECTIVE JUROR: Sometimes, sometime not.

THE COURT: What are you not understanding?

PROSPECTIVE JUROR: So you wish that the Court—in my country that was a lot of words.

THE COURT: So it's sort of the legal terms, like the presumption of innocence and some of those kind of things, is that causing you some difficulty?

PROSPECTIVE JUROR: (Shrugs shoulders.)

THE COURT: Don't know.

PROSPECTIVE JUROR: (Shrugs shoulders.)

THE COURT: If you see them on paper, does that help understand it?

PROSPECTIVE JUROR: No. I see paper says—sometimes reading problems. Somebody says what does this mean. Doesn't matter.

THE COURT: Okay. How about if in talking to other people—if in talking to other jurors, do you think if there was something you didn't understand, perhaps discussing it with someone else, they might be able to help you understand it?

PROSPECTIVE JUROR: Maybe.

THE COURT: Is that how—in your daily life, if something comes up that you don't understand, do you talk to somebody about it to try and reach an understanding?

PROSPECTIVE JUROR: Yes. I ask my husband, and he explain it, and sometime he keep explaining it, still he continues, you know.

THE COURT: Okay. Well, there are two things that I want you to be aware of.

First of all, I will give you the instructions on the law, but they will be given to you in writing, also, so that you can take them back to the jury room and study them if you have questions about them.

Secondly, the jury process is a group process, so that the idea is that all of you can work together to, first of all, find out the facts and, secondly, apply those facts to the law.

Do you think if you were able to discuss those issues with some of the other jurors, you would be able to get an understanding which would allow you to do what's required of you as a juror?

PROSPECTIVE JUROR: I don't know.

THE COURT: Do you want to be a juror, [prospective juror]?

PROSPECTIVE JUROR: Excuse me?

THE COURT: Do you want to serve on this jury?

PROSPECTIVE JUROR: I am so uncomfortable, I don't know what I'm supposed to do. That's why it's confusing.

THE COURT: All right. All right.

At this point I'm going to deny challenging for cause. I think that with the assistance of the other jurors, that [prospective juror] would be able to perform her duties. I think she would be able to ask questions and with some assistance—

So [prospective juror], you are just going to have to ask for your fellow jurors' help, because I'm not going to excuse you at this point in time.

As a preliminary matter, we must determine the nature of the ruling under review. Defendant asserts that the trial court made a finding that the prospective juror was unable to understand English adequately by herself, but determined that she could do so with the assistance of the other jurors. By contrast, the People contend that the trial court made an implicit finding that the prospective juror was able to read, speak, and understand the English language. We agree with defendant and conclude that the People's characterization of the trial court's ruling is not supported by the record.

The trial court's final remarks essentially reflect a finding that, without assistance, the prospective juror could not understand English well enough to serve as a juror. That finding is amply supported by the record. The prospective juror stated that she had difficulty understanding spoken English without the assistance of others, and she consistently demonstrated this difficulty in her disjointed responses to the questions posed by counsel and the court. The prospective juror also stated that she had difficulty reading the English language, an assertion that was demonstrated by her inability to complete the juror questionnaire without her husband's assistance.

■ Thus, the question before us is not a factual one concerning the prospective juror's ability to understand English. Rather, the issue we must decide is whether the trial court abused its discretion by determining that, because the other jurors could help her understand the proceedings, the prospective juror's inability to understand the English language adequately was not grounds for disqualification. We conclude that the court abused its discretion.

■ Section 13–71–105(2)(b) establishes qualifications for individual jurors, but it does not allow for those qualifications to be satisfied by reliance upon the abilities of other jurors. Requiring one juror to depend on other jurors in order to understand the proceedings diminishes the role of the dependent juror and undermines the defendant's right to have the charges decided by twelve independent jurors. *See State v. Gallegos*, 88 N.M. 487, 489, 542 P.2d 832, 834 (Ct.App. 1975)("It is self-evident that a juror who does not possess a working knowledge of English would be unable to serve because he cannot possibly understand the issues or evaluate the evidence to arrive at an independent judgment as to the guilt or innocence of the accused."). Consequently, we conclude the trial court abused its discretion by denying defendant's challenge for cause.

■ Accordingly, because defendant exhausted his peremptory challenges and used one of them to remove the prospective juror who was the subject of the erroneously denied challenge for cause, defendant's conviction must be reversed. *See Carrillo v. People, supra.*

## II.

Because the issue may arise again upon retrial, we address defendant's claim that the trial court erred by refusing his tendered theory of the case instruction. We perceive no error in the trial court's ruling.

■ A defendant is entitled to an accurate instruction on his or her theory of the case if any evidence, no matter how improbable, supports the theory. However, a trial court may refuse to give a proffered theory of defense instruction if its content is already encompassed in other instructions. *People v. Gordon*, 32 P.3d 575, 579–80 (Colo.App.2001).

Here, defendant's theory of defense as to the controlled substance charge was that he

did not know about the small amount of methamphetamine that was in the pocket of the borrowed pants he was wearing when he was taken into custody.

Defendant tendered the following instruction: "The mere presence of drugs in the pocket of the pants that Andrew Orozco was wearing does not in and of itself prove beyond a reasonable doubt that Andrew Orozco knowingly possessed methamphetamine." The trial court rejected this instruction, concluding that it merely emphasized an element of the offense—knowing possession—that was adequately explained in the other instructions.

We conclude the trial court properly rejected defendant's tendered instruction because the other instructions precluded any possibility that defendant could be convicted based on unknowing possession. Specifically, the jury was instructed that defendant could be convicted of possession of a controlled substance only if it found beyond a reasonable doubt that he "knowingly" "possessed" methamphetamine. The court also instructed the jury that "[a] person acts 'knowingly' with respect to conduct or a circumstance described by statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." Additionally, the jury was instructed that "[p]ossession' need not be exclusive, provided that each possessor, should there be more than one, actually knew of the presence of the object, or thing possessed, and exercised actual physical control or immediate, knowing dominion or control over it."

The judgment is reversed, and the case is remanded for a new trial.

Judge TAUBMAN and Judge VOGT concur.